UNITED STATES of America,

v.

Thomas G. LONGO, Defendant.

No. 97–CR–180S.

United States District Court,
W.D. New York.

Aug. 5, 1999.

Denise E. O'Donnell, United States Attorney, James P. Kennedy, Assistant United States Attorney, of counsel, Buffalo, New York, for the Government.

Lipsitz, Green, Fahringer, Roll, Salisbury, & Cambria, Paul J. Cambria, Jr., of counsel, Buffalo, New York, Summers, Anthony, & Vargas, William L. Summers, of counsel, Cleveland, Ohio, Joseph Beeler, Miami, Florida, for defendant.

## DECISION AND ORDER

SKRETNY, District Judge.

### *INTRODUCTION*

Presently before this Court are Defendant Thomas G. Longo's appeal of the Decision and Order of the Honorable Leslie G. Foschio, United States Magistrate Judge, filed on February 26, 1999, and Longo's objections to the Report and Recommendation of Judge Foschio, also filed on February 26, 1999. Longo is charged in a four count Indictment, dated September 19, 1997, with violations of 21 U.S.C. §§ 841(a)(1) and 846, 18 U.S.C. § 2, and 18 U.S.C. § 1952(a)(3). Specifically, Longo is charged with conspiracy with intent to distribute 100 kilograms or more of marijuana, with attempt to possess with intent to distribute 100 kilograms or more of marijuana, with conspiracy to travel interstate, and traveling interstate, and with the intent to carry on an unlawful activity

through the use of a business enterprise involving the unlawful distribution of marijuana. On February 4, 1999, this Court referred this case to Judge Foschio for disposition of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On October 5, 1998, Longo filed extensive Omnibus Motions before Judge Foschio. By these motions, Longo made various discovery requests and, in addition, sought suppression of evidence and/or for evidentiary hearings, and sought another hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). On February 26, 1999, Judge Foschio filed the Decision and Order, which primarily addresses discovery and disclosure issues, and the Report and Recommendation, which primarily addresses the suppression and hearing motions. Most of Longo's requests were denied by Judge Foschio. Longo now appeals Judge Foschio's decision and objects to Judge Foschio's recommendations almost in their entirety.[1] Longo filed his appeal of the Decision and Order and his objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3.

By his appeal of the Decision and Order, Longo disputes Judge Foschio's denial of Longo's Motions: (1) for Disclosure of Records Relating to the Search at his Law Office; (2) to Produce *Brady* Material; (3) for Disclosure of Impairments in the Testimonial Capacity of Prosecution Witnesses; (4) for Discovery of Specified Items; (5)

---

1. In support of his objections and his appeal, Longo has submitted the following: Objections to the Report and Recommendation ("Longo Obj."); Appeal of the Decision and Order ("Longo App."); Reply Memorandum of Law in Support of the Objections ("Longo Reply Obj."); and Reply Memorandum of Law in Support of the Appeal ("Longo Reply App."). In opposition to Longo's objections, the Government has submitted the following: Government's Response to Defendant's Objections ("Gov't Resp. Obj.") and Government's Response to Defendant's Appeal ("Gov't Resp. App."). In addition, this Court heard oral

argument on Longo's objections on June 23, 1999. This Court has also reviewed and considered all of the papers submitted by the parties to Judge Foschio. Of particular relevance to Defendant Longo's objections and his appeal are: Affidavit of Howard J. Meinhardt, Exhibit A to Gov't's Response to the Omnibus Motion ("Meinhardt Aft."); Transcript of Recorded Conversation, Exhibit C to Longo's Exhibits Accompanying Omnibus Motions ("Ex. C to Longo Omnibus Mot."); and the Government's Response to Omnibus Motions ("Gov't Omnibus Resp.").

for Request for Notice Pursuant to Fed. R.Crim.P. 12(d)(2); (6) for Access to Sealed Court Documents; (7) for Production of Statements of Persons Who are Not Prospective Government Witnesses; (8) for Disclosure of Non–Privileged Grand Jury Information; (9) for a Bill of Particulars; (10) to Preserve Evidence and Access to Potential Witnesses; and (11) Longo appeals Judge Foschio's decision to grant the Government's Motions to Disclose.[2]

By his objections to the Report and Recommendation, Longo opposes Judge Foschio's recommendations that: (1) the search warrant of Longo's computer files was supported by probable cause; (2) the warrant was sufficiently particular; (3) a warrantless search was not conducted; (4) the warrant was conducted in good faith; (5) a *Franks* hearing is not warranted; (6) suppression of recorded statements should be denied; (7) the attorney-client privilege was not violated; (8) Longo's Sixth Amendment rights were not violated; (9) the Government did not violate DR 7–104; (10) Longo's Fifth Amendment rights were not violated; and (11) Longo's requests for an evidentiary hearing be denied.

For the reasons set forth below, this Court denies Longo's appeal of the Decision and Order ("D & O") and adopts the Report and Recommendation ("R & R"), thereby denying Longo's motion to suppress evidence and/or for evidentiary hearings, and for a *Franks* hearing.[3]

### BACKGROUND

The charges against Longo arose after the arrest of Lester Williams and William

Cope in March of 1996, following their attempt to purchase 1,000 pounds of marijuana from undercover agents. (R & R at 3–4.) At the time of arrest $146,000 was seized, which was to be used as a down payment on the marijuana. (Meinhardt Aff. at 2.) Williams and Cope agreed to cooperate with the Government, and information was developed regarding Longo's participation in providing a portion of the funds that were to be used to purchase the marijuana. (R & R at 4.)

Williams told the Government that he and Longo were partners in a bar/restaurant named Wizard's Inn. (R & R at 4.) In July of 1995 the establishment burned to the ground and Longo received a settlement check for $130,000, which was deposited into his business account. (R & R at 4.) Caroline Schweter, Longo's legal secretary, cut two checks, each for $65,000, made payable to Williams and Longo. (Gov't Omnibus Resp. at 4.) Longo and Williams traveled to Caesar's Palace, Atlantic City, on March 1, 1996, and deposited the checks at the casino. (Meinhardt Aff. at 3.) Within the next 24 hours they converted the funds to cash and returned to Cleveland. (Meinhardt Aff. at 3.)

Williams supplied the Government with a Promissory Note, backdated to February 29, 1996, and a Purchase Agreement signed by him and Longo. (Meinhardt Aff. at 4.) These documents allegedly purported to represent a legitimate business transaction, in which Longo purchased the remaining half of the business, for $50,000, in return for Longo canceling the Promis-

---

2. Longo includes in his appeal numerous motions, which he does not contest. Those motions are: Notice of Intention to Rely Upon Evidence of Other Crimes, Wrongs, or Acts under fed.R.Evid. 404(b); Notice of Intention to Use Foreign Evidence; Notice of Intention to Conduct Scientific Tests or Experiments; and Leave to File Additional Pretrial Motions. Accordingly, for purposes of this Order, those uncontested issues will not be addressed explicitly. Nonetheless, this Court reviewed Judge Foschio's decisions on these motions and finds that they were not clearly erroneous.

3. This Court will not provide a summary of Judge Foschio's Report and Recommendation or Decision and Order since such a summary would necessarily fail to adequately address the complete and thorough analysis provided by Judge Foschio. Rather, the Report and Recommendation and Decision and Order will be discussed only to the extent required for purposes of the subsequent discussion of Defendant Longo's objections and his appeal.

sory Note, valued at $65,000. After Williams was arrested, he recorded conversations with Longo. (Ex. C to Longo Omnibus Mot.)

During the investigation, the Government received information from Schweter. (Meinhardt Aff. at 5.) She advised the Government that the Promissory Note was backdated and that Longo and his attorney had questioned her about her testimony to the Grand Jury. (*Id.* at 5.) Schweter also gave the Government the file and directory names of both documents, which existed in her computer, and drew a schematic of Longo's office, indicating where her computer was located. (*Id.* at 6.)

A search warrant was issued by the Honorable Patricia A. Hemann, United States Magistrate Judge for the Northern District of Ohio. While executing the search, the Government agents confirmed that both the Promissory Note and the Purchase Agreement were stored in Schweter's computer. (Gov't Omnibus Resp. at 10.)

On September 19, 1997, Longo was indicted on charges of conspiracy with intent to distribute 100 kilograms or more of marijuana, attempt to possess with intent to distribute 100 kilograms or more of marijuana, conspiracy to travel interstate, and traveling interstate, and with the intent to carry on an unlawful activity through the use of a business enterprise involving the unlawful distribution of marijuana. Longo filed extensive Omnibus Motions before Judge Foschio. On February 26, 1999, Judge Foschio filed the Decision and Order and the Report and Recommendation, which denied most of Longo's requests. Longo now appeals Judge Foschio's recommendations and decision almost in their entirety.

## DISCUSSION

### I. STANDARDS OF REVIEW FOR A MAGISTRATE'S DECISION AND ORDER AND FOR A REPORT AND RECOMMENDATION

■ On February 4, 1999, this Court referred this case to Judge Foschio for disposition of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C. § 636(b)(1), a magistrate's decision and order on a nondispositive issue should be reviewed by the district judge according to the clearly erroneous standard. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

■ Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court judge may designate a magistrate judge to submit proposed findings of fact and recommendations for disposition on a defendant's motion in a criminal case. However, the parties have an opportunity to object to the magistrate judge's proposed findings. Upon the filing of timely objections, the district judge must conduct a de novo review of the magistrate judge's report and recommendation "upon the record, or after additional evidence," but only as to those portions of the report and recommendation to which the party objects. Fed.R.Civ.P. 72(b). *See also Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989). The district court is not required to conduct a de novo hearing on the matter, but the court must arrive at its own independent conclusion about those portions of the magistrate's report and recommendation to which the objection is made. *See East River Sav. Bank v. Secretary of Housing & Urban Development*, 702 F.Supp. 448, 452 (S.D.N.Y.1988). Following this determination: "a judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(C). Finally, although a de novo review requires the district court to independently consider and arrive at its own conclusions regarding the portions of the magistrate judge's report and recommendation that were objected to, the dis-

trict court need not specifically articulate all of its reasons for rejecting a party's objections. *See Murphy v. International Business Machines Corporation,* 23 F.3d 719, 722 (2d Cir.1994); *Buffalo Central Terminal v. United States,* 886 F.Supp. 1031, 1035–36 (W.D.N.Y.1995) (citations omitted).

It is under these standards that this Court will evaluate Longo's appeal of Judge Foschio's Decision and Order and his objections to Judge Foschio's Report and Recommendation.

## II. APPEAL OF THE DECISION AND ORDER

Of the nineteen motions included in Longo's Omnibus Motion, Longo now appeals eleven of them. After careful consideration of each motion, this Court agrees with Judge Foschio's reasoning and dismisses Longo's appeal of the Decision and Order.

### A. Motion for Disclosure of Records Relating to Search at Longo's Law Office

■ By this motion, Longo requests a copy of all governmental records related to the search of his law office. (D & O at 5.) Judge Foschio dismissed the motion in part, recognizing that the Government had complied with Defendant's requests. (D & O at 5–6.) However, Judge Foschio ordered the Government to provide such materials, to the extent that they are *Brady* materials, to be disclosed no later than 30 days prior to trial. (D & O at 5.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### B. Motion to Produce *Brady* Material

■ By this motion, Longo seeks disclosure of impeaching material, including: various items relating to communications between himself and Lester Williams, a government informant; communication records of Longo; and various documents and records. (D & O at 7.) Judge Foschio

dismissed this motion as moot due to the Government's willingness to comply. (D & O at 9.) Longo asserts that *Brady* materials are immediately discoverable, which would require production of such documents sooner than 30 days prior to trial. (Longo Reply Obj. at 3–4.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### C. Disclosure of Impairments in the Testimonial Capacity of Prosecution Witnesses

■ By this motion, Longo seeks the disclosure of the impairments of prosecution witnesses in the testimonial capacity, specifically in regard to Lester Williams. (D & O at 9.) Judge Foschio denied the motion because: the Government does not possess such records; such records are protected from disclosure, pursuant to 42 U.S.C. § 290dd–2; and Longo has not demonstrated that Williams was using drugs or alcohol at the time in question. (D & O at 10–12.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### D. Motion for Discovery of Specified Items

■ By this motion, Longo seeks tapes, transcripts, logs or recordings from the investigation of him and incarceration records of potential government witnesses. (D & O at 12–13.) Judge Foschio dismissed most of the motion as moot, once again recognizing the Government's willingness to comply. (D & O at 13–18.) Judge Foschio denied the remaining request for early disclosure of *Jencks* material. (D & O at 13–18.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### E. Request for Notice Pursuant to Fed. R.Crim.P. 12(d)(2)

■ By this motion, Longo requests an order requiring the Government to provide notice of any evidence arguably subject to

suppression, including the statements of Government witnesses. (D & O at 18.) Judge Foschio denied Longo's motion because of Longo's mistaken reliance on *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998) and also because Longo has not met the burden of identifying evidence arguably subject to suppression and because the Government provided the requested information pursuant to voluntary discovery. (D & O at 19–21.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### F. Motion for Access to Sealed Court Documents

By this motion, Longo seeks the following sealed materials: (1) plea agreements involving Lester Williams and William Cope, potential government witnesses; (2) materials relating to the motion for adjournment of sentencing and preliminary hearings pending cooperation with the Government; (3) materials relating to the motion to temporarily relocate; and (4) affidavits concerning a potential conflict of interest between Longo's counsel and counsel for a cooperating witness. (D & O at 22.) Judge Foschio conducted an in camera review and dismissed the motion related to William Cope as moot, for he is deceased. (D & O at 23.) The Government has agreed to supply impeaching materials, therefore, this request is moot. (D & O at 23.) Alternatively, Longo has failed to demonstrate a basis for disclosure. (D & O at 23–32.) Finally, further sealing of the requested documents is necessary given the Government's interest in maintaining the cooperation of witnesses and effectiveness of ongoing investigations. (D & O at 23–32.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### G. Motion for Production of Statements of Persons Who are Not Prospective Government Witnesses

By this motion, Longo requests the disclosure of statements by persons who are not prospective government witnesses, including co-conspirators and unavailable witnesses (such as William Cope, who is now deceased), and seeks disclosure of the identity of all Government informers possessing information that may be material to Longo's alleged guilt or innocence. (D & O at 32.) Judge Foschio denied the motion concerning co-conspirator statements because neither the *Jencks Act* nor Fed.R.Crim.P. 16(a) authorize pretrial disclosure of statements from non-testifying witnesses. (D & O at 32–34.) Judge Foschio denied the motion concerning statements by unavailable witnesses because the *Jencks Act* only applies to those witnesses who have testified. (D & O at 34–35.) Should the Government obtain testimony from those witnesses who are unavailable to testify, the Government will be required to disclose the testimony, pursuant to the *Jencks Act.* (D & O at 35.) Judge Foschio denied Longo's motion for witness and informant identities because Longo failed to demonstrate that such information is material to his defense. (D & O at 35–41.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### H. Disclosure of Non–Privileged Grand Jury Information

By this motion, Longo requests various Grand Jury documents, documents relating to the authority of the Grand Jury, including any extension or impanelment orders and the date of the impanelment, and jury instructions. (D & O at 43.) Judge Foschio dismissed Longo's request for Grand Jury selection documents because the Government agreed and directed Longo to obtain the documents from the Clerk's Office. (D & O at 45.) Judge Foschio dismissed the request for the extension and impanelment orders, and the date of impanelment, because the Grand Jury impanelment date is on the indictment, but he found that the extension

and impanelment orders are discoverable and the Government must release said items. (D & O at 46.) Meanwhile, Longo failed to identify governmental misconduct and, therefore, Judge Foschio denied release of Grand Jury instructions. (D & O at 47–49.) The motion requesting records of hearsay testimony, the circumstances under which the indictment was presented, and the names of persons who have learned confidential Grand Jury information was denied because Longo failed to demonstrate a particularized need. (D & O at 47–49.) Longo asserts that release of Grand Jury instructions is mandated when the accused is charged as a co-conspirator. (Longo Reply Obj. at. 10–11.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### I. Motion for a Bill of Particulars

■■■ By this motion, Longo requests particularization of the term "business enterprise,". names of co-conspirators, time and place of all meetings that are alleged to further the conspiracy, and particularization of the charges against him. (D & O at 51.) Judge Foschio dismissed Longo's request that "business enterprise" be particularized, as the Government subsequently provided such information. (D & O at 51.) Request for the following items was granted: the basis of criminal liability; the names of any co-conspirators; those individuals described as "others" in the Indictment; and whether it is alleged that Longo had actual or constructive possession of the controlled substance. (D & O at 52–53.) Judge Foschio denied further particularization because Longo failed to demonstrate that it would aid in his defense. (D & O at 51–52.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### J. Motion to Preserve Evidence Access to Potential Witnesses

■■■ By this motion, Longo moved to suppress any evidence that may be dis-coverable at some future stage of the proceedings, as well as access to potential witnesses. (D & O at 53.) Judge Foschio dismissed the request to preserve evidence as moot based on the Government's willingness to comply. (D & O at 53–54.) Judge Foschio denied the request to preserve access to potential witnesses because Longo did not accuse the Government of concealing a witness or otherwise engaging in misconduct. (D & O at 54.) This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### K. Government's Motion to Disclose

■■■ By this motion, the Government sought reciprocal disclosure of all books, papers, documents, photographs, tangible objects, or copies or portions thereof which are in the custody and control of Longo. (D & O at 55.) Judge Foschio granted the motion for reciprocal discovery. (D & O at 55.) Longo objects to the Order because presently he does not know whether he will introduce any such evidence, as he does not have any in his possession, and consequently, cannot notify the Government. This Court finds that Judge Foschio's ruling was not clearly erroneous and, therefore, the decision is affirmed.

### III. OBJECTIONS TO THE REPORT AND RECOMMENDATION

Judge Foschio's Report and Recommendation addresses Longo's motion to suppress evidence and/or to conduct evidentiary hearings, and to conduct a *Franks* hearing. Longo offered a multitude of grounds to justify the relief requested, including violations of the Fourth Amendment, the attorney-client privilege, the Sixth Amendment, Disciplinary Rule 7–104 of the Code of Responsibility, and the Fifth Amendment.

In the Report and Recommendation, Judge Foschio addressed each of these grounds for the relief requested individually and in great detail. From this Court's

review of Judge Foschio's analysis, it is clear that these various grounds involve many of the same issues and are based mainly upon the Government's interaction with Caroline Schweter, Longo's secretary, and Schweter's involvement in the events related to this case. Therefore, this Court chose to approach oral argument from this perspective, recognizing the impact that Schweter's involvement has upon all of the issues. For purposes of summarizing the objections, the issues will be arranged in the same manner that Judge Foschio set forth. Following this summary is a discussion of the arguments raised in oral argument.

## A. Fourth Amendment Issues

### 1. Probable Cause

Judge Foschio relied on numerous sources to conclude that the warrant was supported by probable cause. (R & R at 11–14.) Longo contends that portions of the Information, upon which Judge Foschio relied, were obtained pursuant to an illegal search conducted by Longo's legal secretary, Caroline Schweter. (Longo Obj. at 8–10, 14.)

### 2. Particularity of the Warrant

Judge Foschio recommended that suppression be denied because the warrant was sufficiently particular. (R & R at 14–20.) Longo asserts that the agents exceeded the scope of the warrant because an FBI report listed that a document titled TGL–002 was retrieved during the execution of the warrant, rather than TGL–003, which was included in the warrant. (Longo Obj. at 22.)

### 3. Good Faith Exception

Judge Foschio found that the agents did act in good faith, recommending that suppression be denied. (R & R at 22.) Longo contends that the agents did not act in good faith because FBI Special Agent Gummow passed information that he knew obtained from a warrantless search to another agent, FBI Special Agent Meinhardt, who incorporated such information in the affidavit supporting the search warrant application. (Longo Reply Obj. at 9–10.)

### 4. *Franks* Hearing

Judge Foschio concluded that a *Franks* hearing was not necessary to determine the truthfulness of Agent Meinhardt's Affidavit statements because Longo failed to make a preliminary showing that the Agent deliberately misled the court. (R & R at 20–25.) Longo argues that a Franks hearing is still required to assess these statements. (Longo Obj. at 15 n. 1; Longo Reply Obj. at 10 n. 2.) The Government contends that it is irrelevant whether Meinhardt misstated facts because there is enough other evidence to support probable cause without Meinhardt's statements.

### 5. Recorded Statements

Judge Foschio found that the recorded statements were consensual, applying *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir.1973) ("It will normally suffice for the Government to show that the informer went ahead with the call after knowing what the law enforcement officers were about."). (R & R at 39–43.) Neither party objects to Judge Foschio's findings.

### 6. Longo's Warrantless Search Claim

Longo contends that his legal secretary, Caroline Schweter, acted as an agent of the Government and consequently, her actions amounted to a search, the effect of which was a violation of the Fourth Amendment. (Longo Obj. at 8–10, 18–20.) Judge Foschio recommended that suppression, and an evidentiary hearing to determine the extent of Schweter's conduct be denied because Caroline Schweter was not an agent of the Government. (R & R at 38.)

## B. Attorney–Client Privilege

Judge Foschio recommended that the relief requested cannot be granted on the basis of a violation of attorney-client privilege because Longo waived the attorney-client privilege. (R & R at 46, 47 .) Longo claims that it is not possible to waive the privilege when communicating to a third party when that third party is an agent of the Government. (Longo Obj. at 27–33.)

## C. Sixth Amendment Claims

Judge Foschio recommended that Longo was not entitled to the relief requested on this basis because Longo's Sixth Amendment rights were not violated. Longo claims that his rights were violated because the Government, acting through Caroline Schweter, interfered with Longo's right to counsel.

## D. Disciplinary Rule 7–104 of the Code of Responsibility Claim

Judge Foschio recommended that suppression on this ground be denied because the Disciplinary Rule is not applicable. (R & R at 56.) The Disciplinary Rule prohibits an attorney from communicating with a represented party. (R & R at 52.) Longo contends that the Government contacted him via Ms. Schweter. Judge Foschio rejected this argument because Ms. Schweter was not acting on behalf of the Government and because the FBI and DEA agents that she had contact with are not attorneys and, therefore, the Disciplinary Rules are not applicable. (R & R at 53–54.) Longo reiterates his previous argument and contends that AUSA Kennedy knew of and acquiesced in Ms. Schweter's actions, and therefore, the Disciplinary Rule does apply. (Longo Obj. at 31–34.)

## E. Fifth Amendment Claims

Judge Foschio recommended that dismissal of the Indictment be denied because due process has not been violated since Longo failed to demonstrate "outrageous conduct" and that an evidentiary hearing was not required on this issue. (R & R 57–59.) Longo contends that the Government used Ms. Schweter to eavesdrop upon privileged information and this warrants dismissal. (Longo Obj. at 31.)

## F. Longo's Request for an Evidentiary Hearing

Judge Foschio denied Longo's request for an evidentiary hearing because Longo failed to demonstrate that such a hearing is warranted. (R & R at 57.) Longo asserts that absent such a hearing, Judge Foschio's recommendations are the product of a flawed legal process based on selective disclosure by the Government. (Longo Obj. at 24.) Longo contends that there are sufficient, definite, specific, and detailed facts, including those disclosed in the Government's own papers, that warrant holding a hearing. (*Id.* at 18–19.)

The Government agrees with Judge Foschio that Longo did not offer non-conjectural facts that entitled him to relief. (Gov't Resp.Obj. at 16.) In addition, the Government argues that because Longo is not ultimately entitled to the relief which he seeks, in that Judge Foschio recommended denial of suppression, Longo is not entitled to a hearing. (*Id.* at 18–19.)

## IV. ORAL ARGUMENT

On June 23, 1999, this Court heard oral argument on Defendant Longo's appeal of the Decision and Order and his objections to the Report and Recommendation. This Court heard argument after conducting a thorough review of the voluminous record on these issues, including the submissions to this Court as well as the record before Judge Foschio. Based on this review, this Court determined that, rather than conduct argument on motion by motion, or an issue by issue, basis, it would be most constructive to examine the details of Schweter's involvement in this case, including her interaction with the Government. This Court approached oral argument accordingly.

At oral argument, this Court requested that Longo elaborate on his grounds for suppression of evidence seized from his law office computer and/or for an evidentiary hearing to determine the extent of Schweter's involvement with the Government. Stressing that Schweter acted as an agent of the Government and consequently, her actions amounted to a search, Longo argued that this involvement touched on a multitude of the grounds for the relief requested, including violations of the Fourth Amendment, the Sixth Amendment, and attorney-client privilege.

Longo asserted that, at the threshold, Judge Foschio could not make a proper decision on Longo's motion because he was not first afforded a hearing. Longo contended that there was a fundamental flaw in Judge Foschio's reasoning because the Government was allowed to refute Longo's preliminary showings with one-sided evasive versions of the facts and that artfully drafted affidavits should not be sufficient to keep Longo from having a hearing. Longo claimed that he should now be allowed the hearing in an effort to remedy these problems.

Given an opportunity to elaborate on these arguments, Longo analogized Schweter to a listening device placed in his law office by the Government and asserted that once an illegal search is conducted, the Government then cannot remedy the illegal search by subsequently conducting a legal search. Relying on the argument that the Fourth Amendment is designed to be a deterrent, Longo argued that it is irrelevant whether the warrant authorizing the second search contained sufficient probable cause irrespective of Schweter's actions.

Furthermore, Longo insisted that the argument that Schweter's actions helped narrow the search is tantamount to a situation where the Government seeks to locate drugs that it knows are hidden somewhere in a large warehouse by asking a warehouse guard where the drugs are hidden, thereby obtaining the requisite particularity to support the issuance of a warrant. Longo claims this is what the Government did by using Schweter to obtain the requisite particularity to support the warrant application because of the suspicions that the certain documents could be located in Longo's law office.

Longo also reasserted his argument that the Government agents exceeded the scope of the warrant because an FBI report listed that a document titled TGL–002 was retrieved during the execution of the warrant, rather than TGL–003, which was included in the warrant. Longo contended that Judge Foschio inappropriately found that the file name discrepancy was the product of a typographical error. Longo claims that this conclusion was inappropriate because the Government did not even raise this argument.[4]

Longo also emphasized his contentions regarding the alleged violation of the attorney-client privilege. Longo asserted that the Government should have known that Longo was represented because Longo and his attorney questioned Schweter about her testimony to the Grand Jury. Longo contends that because Schweter was an agent of the Government that the Government therefore, should have realized that Longo was represented at this point. Longo claims that any contact subsequent to this incident is strictly forbidden because the Government knew Longo to be represented.

This Court considered these arguments, and the Government's responses, in a de novo review of Longo's objections to Judge Foschio's Report and Recommendation.

---

4. This Court notes that Judge Foschio did not make a factual conclusion that the discrepancy was the product of a typographical error. Rather, Judge Foschio pointed out that the discrepancy "represents *more probably* typographical error, and, as such, therefore fails to constitute evidence of improper execution." (R & R at 19.) Nonetheless, this Court considered this allegation, as well as Longo's other allegations regarding factual discrepancies in the context of the various forms of relief requested.

Following this de novo review and a consideration of the voluminous record in this case, this Court adopts Judge Foschio's recommendations that: the warrant was supported by independent probable cause, (*see* R & R at 10–14); the warrant was sufficiently particular, (*see* R & R at 14–20); the involvement of Caroline Schweter in this case does not support Longo's request for suppression or for an evidentiary hearing to determine the extent of Schweter's conduct, (*see* R & R at 25–38); and there was no violation of the attorney-client privilege. (*See* R & R at 44–52). In addition, this Court conducted a de novo review Judge Foschio's Report and Recommendation in its entirety in the context of the arguments raised in the submissions to this Court as augmented by oral argument. Based on this review, this Court adopts Judge Foschio's Report and Recommendation. As such, Defendant Longo's motion to suppress evidence and/or to conduct evidentiary hearings, and to conduct a *Franks* hearing is denied.

### CONCLUSION

After a careful review of the Report and Recommendation, the Decision and Order, the pleadings, and materials submitted by both parties, this Court rejects Longo's appeal of Judge Foschio's Decision and Order and Longo's objections to the Report and Recommendation. Having reviewed the relevant legal authority and considered the parties' arguments as to the law and the facts, this Court adopts the reasoning of Judge Foschio's Decision and Order and his Report and Recommendation. Accordingly, this Court denies Defendant Longo's motion to suppress evidence and/or to conduct evidentiary hearings, and to conduct a *Franks* hearing is denied.

### ORDER

IT IS HEREBY ORDERED that this Court rejects Defendant Longo's appeal of Judge Foschio's Decision and Order.

FURTHER, this Court rejects Defendant Longo's objections to Judge Foschio's Report and Recommendation.

FURTHER, Defendant Longo's motion to suppress evidence and/or to conduct evidentiary hearings, and to conduct a *Franks* hearing is DENIED.

SO ORDERED.

### REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Honorable William J. Skretny on February 4, 1999 for disposition of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B). It is presently before the court on the Defendant's Omnibus Motions for Discovery and to suppress evidence, filed October 5, 1998 (Docket Item No. 43).[1]

### *BACKGROUND*

Defendant Thomas G. Longo ("Defendant") was charged in a four count indictment on September 19, 1997 with violations of 21 U.S.C. § 841(a)(1), § 846, and 18 U.S.C. § 2, § 1952(a)(3). Specifically, Defendant is charged with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, and with attempt to possess with intent to distribute 100 kilograms or more of marijuana. Defendant is also charged with conspiracy to travel interstate, and traveling interstate, with the intent to carry on an unlawful activity through the use of a business enterprise involving the unlawful distribution of marijuana.

Defendant has filed omnibus motions seeking suppression of evidence seized

---

**1.** Defendant's remaining discovery motions are addressed in a Decision and Order filed

with this Report and Recommendation.

from his law office computer; suppression of recorded conversations between Defendant and Lester Williams, an unindicted coconspirator. Alternatively, Defendant seeks an evidentiary hearing to resolve several disputed issues. Defendant also seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) directed to an affidavit by Howard Meinhardt.

The Government filed, on September 28, 1998, its Response to Defendant's motion (Docket Item No. 41) ("Government's Response"). In its response, the Government submitted an unredacted version of the search warrant, an unredacted version of the affidavit submitted in support of the search warrant, and the exhibits attached to the search warrant to Defendant. The Government also disclosed four reports by the Federal Bureau of Investigation ("FBI") detailing the property seized during the search of Defendant's law office.

Defendant submitted a Reply Memorandum of Law on October 5, 1998 (Docket Item No. 43) ("Defendant's Reply Memorandum"). The Government submitted a Reply Affidavit in Response to Defendant's Motion on October 15, 1998 (Docket Item No. 45) ("Government's Reply Affidavit"). Oral argument was conducted on October 15, 1998.

Defendant submitted a Supplemental Memorandum of Law on November 24, 1998 (Docket Item No. 50) ("Defendant's Supplemental Memorandum of Law"). The Government submitted a Supplemental Response to Defendant's motion on December 4, 1998 (Docket Item No. 51) ("Government's Supplemental Response"). For the reasons which follow, Defendant's motions should be DENIED.

### FACTS[2]

On or about March 12, 1996, agents of the United States Drug Enforcement Administration ("DEA") in Buffalo arrested two individuals, Lester Williams and William Cope, after they attempted to purchase 1,000 pounds of marijuana from undercover DEA agents. Affidavit of Howard J. Meinhardt, Exhibit A to Government's Response ("Meinhardt Affidavit") at 2. At the time of this arrest, DEA agents in Buffalo seized approximately $146,000 which represented the down payment on the marijuana. *Id.*

Following their arrests, both Williams and Cope agreed to cooperate with the Government. As a result of Williams' cooperation, DEA Agents in Buffalo learned that Williams and Defendant had been business partners in a bar and restaurant named Wizard's Inn, in the Cleveland, Ohio area. Meinhardt Affidavit at 2. In July of 1995, the Wizard's Inn was destroyed by fire, and as the result of an insurance settlement, on January 30, 1996, a check in the amount of $130,000 was deposited in a bank account for which Defendant was the sole signator. *Id.*

On February 29, 1996, Defendant directed his legal secretary, Caroline Schweter, to prepare two bank drafts, one in the amount of $65,000 payable to Defendant, and the other in the amount of $65,000 payable to Williams. Government's Response at 4. Defendant and Williams then traveled to Atlantic City on March 1, 1996, depositing these official checks at a casino. Meinhardt Affidavit at 3; Government's Response at 4. Having converted the two $65,000 checks into cash, Defendant and Williams returned to Cleveland. *Id.*

On March 11, 1996, Defendant provided to Williams part of his $65,000 share of the insurance proceeds, allegedly to be used in making a down payment for the purchase of 1,000 pounds of marijuana in Buffalo on March 12, 1996. Meinhardt Affidavit at 3.

Following his arrest, on April 5, 1996, Williams engaged in secretly recorded con-

---

**2.** Facts are taken from the pleadings and papers filed in connection with the pending motions.

versations with Defendant. Transcript of Recorded Conversation ("Transcript"), Exhibit C to Defendant's Exhibits Accompanying Omnibus Motions, filed September 29, 1998 (Docket Item No. 42) ("Defendant's Exhibits"). A grand jury was empaneled on May 3, 1996 to investigate Defendant's involvement with Williams in the attempted purchase of marijuana.

According to the government attorney overseeing the investigation, Assistant United States Attorney James P. Kennedy, an individual identifying herself as Defendant's legal secretary contacted him by phone on October 8, 1996, stating that she had information concerning Kennedy's investigation of Defendant. Government's Supplemental Reply Affidavit, attachment to Government's Supplemental Response, at 1. Kennedy directed the secretary not to remove or review any files located within Defendant's law office. *Id.* Kennedy identified this individual as Caroline Schweter, Defendant's legal secretary. *Id.*

Williams met with Defendant on January 11, 1997, executing two documents, a "Purchase Agreement for Sale of Partnership Interest," and promissory note. Meinhardt Affidavit at 4; *see* Exhibit A to Government's Response. According to Williams, the promissory note was backdated to reflect a date of February 29, 1996. *Id.* This backdating was verified by Caroline Schweter. *Id.*

Schweter again contacted Mr. Kennedy on May 22, 1997. Government's Supplemental Reply Affidavit at 2. According to Kennedy, on this occasion, Schweter advised him that Defendant and his attorney, William Summers, had questioned her regarding her testimony on May 9, 1997 before the federal Grand Jury investigating Defendant. *Id.* Kennedy stated that he first received contact from an attorney representing Defendant on June 9, 1997, in a telephone call from Mr. Summers. *Id.*

Defendant was charged in the instant four count indictment on September 19, 1997 as stated with intent to distribute 100 kilograms or more of marijuana, and with attempt to possess with intent to distribute 100 kilograms or more of marijuana. Defendant was also charged with conspiracy to travel interstate, and traveling interstate, with the intent to carry on an unlawful activity through the use of a business enterprise involving the unlawful distribution of marijuana. Indictment, Exhibit A to Government's Response.

Following the return of the Indictment, Caroline Schweter contacted Special Agent Dale Kasprzyk of the DEA's Buffalo Office on September 22, 1997. Meinhardt Affidavit at 5. During this conversation Schweter advised Kasprzyk that on September 22, 1997, Defendant had approached her and inquired about the nature of her testimony before the Grand Jury on May 9, 1997. *Id.* Specifically, Schweter told Kasprzyk that Defendant had questioned whether she had been asked during the Grand Jury proceeding about the promissory note which she had typed and backdated at Defendant's direction. *Id.* Schweter averred that Defendant advised her that if asked, she should testify that the promissory note was prepared on or before February 29 1996. *Id.* Defendant also inquired as to whether the note and agreement executed between Defendant and Williams on January 11, 1997 remained stored in digital form on the computer; Schweter told Defendant that she believed they were still so stored. *Id.* at 5–6. According to Meinhardt, Defendant advised Schweter that he intended to have her remove such files from the computer when he returned to the office on September 24, 1997, following his arraignment in Buffalo on September 23, 1997. *Id.* at 6.

After Kennedy was informed by Kasprzyk of this information, he contacted agents of the FBI's Cleveland Office on September 23, 1997. Schweter then spoke with FBI Special Agent Barry Gummow on the same date, advising him that a copy of the promissory note and purchase agreement were stored in the computer at

Defendant's law office. Meinhardt Affidavit at 6. Specifically, Schweter informed Gummow that the promissory note was located in a directory entitled "MISC.", under the file name "TGL–003," and the purchase agreement was in the directory entitled "IMF" under the file name "911." *Id.* Schweter also provided a schematic diagram of Defendant's law office, indicating where the computer was located. *Id.* at 7. Agent Gummow reported this information to FBI Special Agent Howard Meinhardt, who completed an affidavit to support an application for a search warrant directed to the computer files. *Id.*

On September 23, 1997, FBI agents in Cleveland sought and obtained a search warrant from the Honorable Patricia A. Hemann, United States Magistrate Judge for the Northern District of Ohio. See Exhibit B to Government's Response. The warrant called for the seizure of two files from Defendant's law office computer, one a promissory note, entitled TGL–003, contained within the directory labeled "MISC.", and the other a purchase agreement entitled 911, contained in the directory labeled "IMF." *Id.*

Four FBI agents, including Agents Gummow and Meinhardt, executed the search warrant at approximately 5:55 P.M. on September 23, 1997. Government's Response at 9. At that time, the agents were met by Mr. Edwin J. Vargas, an attorney who stated that he was representing Defendant. According to the Government, Vargas was presented a copy of the search warrant. *Id.* The agents completed the search at approximately 8:25 P.M. on September 23, 1997. *Id.* Agent Gummow prepared a report of the property received and presented it to Mr. Vargas, who signed the report. *Id.* at 10. According to this report, during the September 23, 1997 search of Defendant's law office computer, the Government seized (1) a directory listing of the hard drive contained on the computer used by Caroline Schweter at Defendant's law office, and (2) computer files copied to a computer disk retained by the Government, "C:*W IN-WORD*MISC*TGL–003.DOC," and "C:*WINWORD*IMF*911.DOC;" and identical copies of these files gathered from two compact discs labeled "Backup 8–27–97" and "Backup 1–12–97" and stored to a computer disk retained by the Government. Exhibits F, G to Government's Response.

## DISCUSSION

### 1. Defendant's Fourth Amendment Claims

Defendant claims that suppression of the evidence seized by the Government is required as (1) the Government lacked probable cause to support its search warrant; (2) the search warrant lacked sufficient particularity; and (3) the Government, through Defendant's secretary, Caroline Schweter, conducted a warrantless search of Defendant's law office computer. Defendant's Motion at 20, 13, and 16. Defendant also seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) directed to an affidavit submitted by Howard J. Meinhardt. *Id.* at 21. Finally, Defendant claims that suppression of any recorded conversations between Defendant and Lester Williams is required, as the Government has failed to demonstrate Williams' voluntarily consent to such recordings. *Id.* at 21–22.

The Fourth Amendment states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Under the exclusionary rule, as applicable in federal prosecution, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *see also Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). This prohibition applies as well to the fruits of the

illegally seized evidence. *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

■■■■■ A defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on the claim, but must make a preliminary showing of facts which, if proved would require the granting of relief. *United States v. Pena,* 961 F.2d 333, 339 (2d Cir.1992). To meet that burden a defendant must, at a minimum, present his or her claim through an affidavit of an individual with personal knowledge of the relevant facts. *United States v. Gillette,* 383 F.2d 843, 848–49 (2d Cir.1967); *United States v. Ventura,* 1998 WL 186737, *1 (S.D.N.Y.1998); *United States v. Vasta,* 649 F.Supp. 974, 986 (S.D.N.Y.1986). Such an affidavit must contain allegations that are "definite, specific, detailed and nonconjectural." *Pena, supra,* at 339.

### a. *Search Warrant for Defendant's Computer Files*

#### 1. *Probable Cause*

Defendant argues that the fruits of the Government's September 23, 1997 search resulting in the seizure of computer files must be suppressed as the Government lacked probable cause to support its search warrant. Defendant's Motion at 20.

■■■■■ In determining whether probable cause for a search warrant exists, the issuing magistrate is simply to make a practical, commonsense decision whether, given the "totality of the circumstances" set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). An issuing judge's determination of probable cause will be upheld if she had a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Gates, supra,* at 236, 103 S.Ct. 2317. An

affidavit in support of an application for a search warrant demonstrates a proper showing of probable cause when it sets forth facts which are sufficient to induce a reasonably prudent person to believe that a search of the areas described within the warrant will uncover evidence of a crime. *Berger v. New York,* 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The quantum of proof necessary to establish probable cause is "only the probability, and not a prima facie showing, of criminal activity...." *Gates, supra* (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Significantly, a judge's determination of probable cause should be given great deference by a reviewing court. *Gates, supra,* at 236, 103 S.Ct. 2317; *United States v. Nichols,* 912 F.2d 598, 602 (2d Cir.1990). The resolution of marginal cases should be determined with regard to the preference accorded to warrants. *Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■■■■ In this case, the Affidavit of Agent Howard J. Meinhardt, submitted by the Government in support of its application for a search warrant for Defendant's law office, supports a finding of probable cause. *See* Exhibit A to Government's Response. The Meinhardt Affidavit contains statements detailing illegal activity by Defendant related to the charges in the Indictment, and is based on information provided by Defendant's Grand Jury indictment, the government informant, Lester Williams, as well as information provided by Defendant's legal secretary, Caroline Schweter. Meinhardt Affidavit at 2. Specifically, the Meinhardt Affidavit stated that Defendant and Williams executed a promissory note and purchase agreement on January 11, 1997, and Defendant backdated the promissory note to reflect a date of February 29, 1996. *Id.* at 4.

Additionally, Meinhardt had been informed by DEA agents that Defendant made statements during secretly recorded

conversations with Williams on April 5, 1996, inferring that he had provided a portion of the insurance proceeds to Williams as a down payment for the marijuana.[3] Meinhardt Affidavit at 3. At the time of its application for a search warrant, the Government was in possession of the original promissory note and purchase agreement executed between Defendant and Lester Williams. These documents were incorporated by reference in the search warrant as issued by Judge Hemann. Exhibit B to Government's Response.[4]

Williams provided information about the nature of Defendant's criminal activity, reporting that Defendant and Williams had been partners in a bar and restaurant which was destroyed by fire. Meinhardt Affidavit at 2. According to Williams, Defendant recovered $130,000 as a result of an insurance settlement for the destruction of this establishment. *Id.* at 3. Defendant then directed that two bank drafts, each in the amount of $65,000 be made payable to Defendant and Lester Williams. *Id.* at 3. Defendant and Williams converted these bank drafts into $130,000 in cash during a trip to Atlantic City. *Id.* On March 11, 1996 Defendant provided Williams all or part of his share of the insurance proceeds, allegedly for the purchase of 1,000 pounds of marijuana in Buffalo, New York on March 12, 1996. *Id.*

Williams submitted to the Government a promissory note and purchase agreement executed between Defendant and Williams on January 11, 1997, providing for the distribution of $65,000 to Williams by Defendant. Meinhardt Affidavit at 4. Williams averred that the promissory note had been backdated to February 29, 1996 at the time he signed it. *Id.; see also* Exhibit A to Government's Response.

In the Affidavit, Agent Meinhardt opined, based on his experience, that these documents were executed by Defendant and Williams to create the appearance that the Defendant's payment of $65,000 to Williams was a legitimate business transaction. Meinhardt Affidavit at 5. Caroline Schweter, Defendant's legal secretary, confirmed the existence of both the promissory note and purchase agreement in Defendant's computer. *Id.* These averments as to the execution of the promissory note and purchase agreement, and backdating of the promissory note, provided a factual basis upon which the transaction could reasonably be found to be a fraudulent attempt to disguise the true nature of Defendant's involvement in the underlying criminality. *See United States v. Hunter,* 13 F.Supp.2d 574, 580 (D.Vt. 1998) (search of defendant's law office for evidence of money laundering was supported by probable cause, as DEA agent's affidavit accompanying warrant application contained information gathered from informant who was defendant's client and participant along with Defendant in alleged money laundering schemes).

Based on Meinhardt's experience, he was of the opinion that Defendant's law office computer would contain evidence of

---

3. During these conversations, Defendant stated to Williams, "[t]he only thing I didn't do . . . was not give you the money, but I told you not to go. I told, when you started talking about entrapment, that blew my mind. I said don't do it." Transcript of Recorded Conversation between Defendant and Lester Williams, Exhibit C to Defendant's Exhibits at 17. Additionally, Defendant stated, "He also told me that I should stop practicing in criminal law. That I should resign my position in Bedford. And this is all based upon what you told me on the phone when I talked to you in Florida. That they knew that I had given you $65,000." *Id.* at 14.

4. Although the Government conceded at oral argument that is uncertain whether the warrant was executed with the original promissory note and purchase agreement attached as exhibits, Transcript of Oral Argument, filed November 2, 1998 (Docket Item No. 47) at 76, whether the executing officers were in possession of these documents at the time of their execution of the warrant is immaterial to a determination of probable cause. See Fed.R.Crim.P. 41(d) (copy of warrant and receipt for items taken required following execution of warrant).

narcotics trafficking. *United States v. Riley*, 906 F.2d 841, 845 (2d Cir.1990); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985) (agent's expert opinion is an important factor to be considered by judicial officer with regard to warrant application and should also be considered in determining whether warrant was executed in good faith).

Based on the Meinhardt Affidavit, including information gathered from Williams and Schweter, particularly when evaluated along with the Defendant's Indictment on the instant charges, a reasonably prudent person would believe that a search of Defendant's law office computer would uncover evidence of a crime. *Berger, supra*, at 55, 87 S.Ct. 1873. The Meinhardt Affidavit therefore provides sufficient probable cause to support the search warrant issued by Judge Hemann on September 23, 1997. Accordingly, Defendant's motion for suppression on the ground that the search warrant lacked probable cause should be DENIED.

### 2. *Particularity*

In his discovery motion, Defendant attacks the particularity of the search warrant. *See* Defendant's Motion at 13. Defendant argues that "[s]ince the search party at the firm served a copy of a search warrant devoid of exhibits, presumptively they traveled themselves under such a warrant and executed the search in reliance on a defective instrument." *Id.* at 13.

 However, the search warrant was sufficiently particular regardless of the presence of the exhibits. It is basic that a search warrant must describe with particularity "the place to be searched, and the persons or things to be seized," U.S. Const. amend IV, to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Bianco*, 998 F.2d 1112, 1115 (2d Cir.1993); *United States v. George*, 975 F.2d 72, 75 (2d Cir.1992). Depending on the circumstances, a warrant need not specifically describe the items to be seized provided the officers seeking the warrant "have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have assured that all those facts were included in the warrant." *United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).

 A warrant is sufficiently particular under the Fourth Amendment if it enables the executing officer to ascertain and identify with reasonable certainty those items that the issuing magistrate has authorized him to seize. *George, supra*, at 75 (citing *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)). "Mere reference to 'evidence' of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize." *George, supra*, at 76 (citing cases). The particularity requirement renders a general search impermissible and prevents the seizure of one thing under a warrant describing another. *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *see also Young, supra*, at 758. "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron, supra*, at 196, 48 S.Ct. 74; *see also Young, supra*, at 758.

 While the purpose of the particularity requirement is to avoid leaving to "the unguided discretion of the officers executing the warrant the decision as to what items may be seized," (*United States v. Riley*, 906 F.2d 841, 844 (2d Cir.1990), citing *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) and *Marron v. United States, supra*), the particularity requirement is not so exacting as to eliminate all discretion of the executing officers. *United States v. Riley, supra*. "Once a category of seizable papers has been adequately described, with the description delineated in part by

an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment...." *United States v. Riley, supra,* at 845. As the court in *Hunter, supra,* stated, "[a] finding of probable cause is not predicated on the government's knowing precisely how certain records are stored." *Hunter, supra,* at 581.

In the present, case, the search warrant was sufficiently particular. The warrant authorizes a search of the hard drive and any data disks of the computer used by Schweter, for

> two documents, one a promissory note, entitled TGL–003, contained within the directory labeled MISC. and a purchase agreement entitled 911, contained in the directory entitled IMF (hard copies of which are attached hereto as Exhibits B and C respectively).

Exhibit B to Government's Response. The warrant therefore specifically described the area to be searched, including the locations and file names of the items to be seized, and was sufficiently particular regardless of the presence of any exhibits.

Defendant argues that, absent the promissory note and purchase agreement, the search warrant lacked sufficient particularity, and therefore, given the absence of the exhibits from the search warrant at the time of its execution, the agents may have exceeded the scope of the original search warrant. Transcript of Oral Argument at 29–36. Defendant also argues that the agents exceeded the scope of the search warrant based on an inventory of the items seized contained in an FBI report dated September 15, 1998. *Id.*

As the warrant was sufficiently particular and probable cause to search existed independent of the exhibits, Defendant's argument that the agents exceeded the scope of the search warrant based on the absence of these exhibits is moot. Assuming, *arguendo,* that the absence of these exhibits rendered the search warrant "defective," as Defendant asserts, the Mein-

hardt Affidavit provided sufficient detail to confine the scope of the Government's search, and the agents had sufficient information to confine the scope of their search. *See Bianco, supra,* at 1117 (lack of particularity in search warrant remedied by executing agents' knowledge of the scope of search, derived from details provided in unattached affidavit, and presence at time of search of agent who had read affidavit); *George, supra,* at 76 (where sufficiently detailed affidavit is incorporated by reference in the warrant itself and attached to it, probable cause may exist regardless of lack of particularity in warrant). The search warrant application incorporates the Meinhardt Affidavit by reference, and Defendant does not dispute that the agents were aware of its content at the time of the search. *See* Transcript of Oral Argument at 34. Further Agent Meinhardt, who had prepared the affidavit submitted by the Government in applying for the search warrant, participated in the execution of the search. *Bianco, supra,* at 1117 (although search warrant failed to particularly describe property to be seized, no violation of particularity requirement occurred, where search warrant affidavit was specific in describing evidence sought, affidavit was present at time of search, and agent who supervised search had familiarized himself with warrant and supporting affidavit); *United States v. Fronk,* 173 F.R.D. 59, 73 (W.D.N.Y.1997) (although the warrant itself was insufficiently particular, the same DEA agent who submitted the affidavit in support of the warrant participated in the execution of the warrant, therefore affidavit incorporated by reference into search warrant and no Fourth Amendment violation).

██ Defendant also argues that the agents exceeded the scope of the warrant based on the contents of an FBI report dated September 15, 1998. Transcript of Oral Argument at 29–30. The search warrant stated that two computer files, "TGL–003" and "911" were the target of the search. Exhibit A to Government's Re-

sponse. An FBI Form 302 report dated September 24, 1997, in describing the search of Defendant's computer, states that two files, "911.DOC" and "TGL–003.-DOC" were copied to a diskette retained by the searching agents. See Exhibit G to Government's Response. However, the September 15, 1998 FBI Report states that a search of the files copied revealed two documents, "TGL–002.DOC" and "TGL–003.DOC." *Id.* At oral argument, Defendant alleged that the inclusion of "TGL–002.DOC" on this report is evidence that the Government exceeded the scope of the search warrant. Transcript at 29–30. However, the parties have not addressed this claim in their subsequent filings with the court. Based on the evidence submitted, the court finds the discrepancy in the file names represents more probably typographical error and, as such, therefore fails to constitute evidence of improper execution.[5]

■ Even if the file "TGL–002.DOC" is suppressed, however, the Government's search was nonetheless supported by probable cause. It is well established that only those items seized beyond the warrant's scope must be suppressed. *See, e.g., George, supra,* at 79; *In Re Search Warrant Dated July 4, 1977,* 667 F.2d 117, 130–31 (D.C.Cir.1981), *cert. denied sub nom., Founding Church of Scientology v. United States,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982). The Second Circuit has stated "the remedy with respect to any items exceeding the scope of the warrant [is not] invalidation of the search but suppression of those items." *George, supra,* at 79; *United States v. Dunloy,* 584 F.2d 6, 11 n. 4 (2d Cir.1978).

■ In this case, prior to the Government's execution of the search warrant, Williams disclosed the promissory note and purchase agreement to the Government, stating that the promissory note had been backdated at the time he signed it. Meinhardt Affidavit at 4. This statement, by itself, is sufficient to support a finding of probable cause to search Defendant's law office computer for such documents, as it tends to establish Defendant's efforts to fraudulently create the appearance of a legitimate basis for Defendant's receipt and distribution of the insurance proceeds to Williams prior to the attempted purchase of the marijuana which is the basis of the charged offenses. Put simply, the documents tend to show there was criminality afoot and that Defendant was personally involved in the scheme to purchase marijuana. Additionally, the magistrate judge was entitled to rely on Schweter's assertion that as of the day before the application she believed the documents remained stored on the computer. Defendant has submitted no factual evidence sufficient to demonstrate that the agents exceeded the scope of the search warrant. Defendant's speculation is therefore insufficient to warrant suppression of the evidence seized by the Government, *Pena, supra,* at 339, and Defendant's motion to suppress on this ground should be DENIED.

### 3. *Good Faith Exception*

■ Even if probable cause was lacking in this case, Defendant provides no evidence that the agents failed to act in good faith, and the exception to the exclu-

---

5. Notably, the September 24, 1997 FBI Report stated that two computer files "911.-DOC," and "TLG–003.DOC" were copied by the Government at the time of the search. See Exhibit G to Government's Response. This Report ·did not state that Defendant's computer file "TGL–002.DOC" had been copied. *Id.* Additionally, the September 24, 1997 Report contains a discrepancy between the file names stated on the face of the search warrant, "TGL–003" and "911," and the names of those files seized as they appear on the Report, "TLG–003" and "911." Exhibits A, G to Government's Response. Defendant has not argued that the Government exceeded the scope of the search warrant based on this discrepancy. Based on the record, it is reasonable to infer that this discrepancy was the result of a typographical error by the Government in transcribing the file names to the Report.

sionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) therefore applies.

 Under *Leon*, evidence seized pursuant to a challenged warrant is admissible provided the police act with objective and reasonable good faith, even if the judicial officer erred in finding probable cause. *United States v. Leon*, 468 U.S. 897, 922 (1984). In *Leon*, the Supreme Court held that an exception to the exclusionary rule applies provided the officer's reliance on the judicial officer's probable cause determination and on the technical sufficiency of the issued warrant is objectively reasonable. *Leon, supra*, at 922, 104 S.Ct. 3405. However, exclusion remains available where the judicial officer was misled by relying on information which the affiant knew was false or would have known but for his reckless disregard for the truth, or where the issuing judicial officer wholly abandoned his judicial role. *Leon, supra*, at 923, 104 S.Ct. 3405. The test for objective good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Moore, supra*, at 222.

In the present case, it is undisputed that Judge Hemann based her determination of probable cause on the Meinhardt Affidavit, which contained information obtained pursuant to Defendant's Indictment and information provided by informant Lester Williams and Caroline Schweter. Judge Hemann issued a search warrant authorizing the search of Defendant's law office computer for "two documents, one a promissory note entitled TGL–003, contained within the directory labeled MISC, and a purchase agreement entitled 911, contained in the directory entitled IMF." *See* Exhibit A to Government's Response. Additionally, the executing agents relied upon the information contained in the Meinhardt Affidavit in conducting the search and such information properly guided their execution of the warrant. *See Bianco, supra*, at 1117 (lack of particularity in search war-

rant cured by affidavit and agents' knowledge of its contents during execution of search warrant); *George, supra*, at 76 (where sufficiently detailed affidavit is incorporated by reference in the warrant itself and attached to it, probable cause may exist regardless of lack of particularity in warrant).

 Defendant's speculative assertions that the agents exceeded the scope of the search warrant based on their execution of the warrant absent the exhibits, and the discrepancy between the computer file names in the warrant and report, are insufficient to demonstrate a lack of good faith by the agents.

Here, the court has concluded that the issuing magistrate judge was not misled by false information, nor was the affidavit so lacking in indicia of probable cause as to render the officers' belief in it entirely unreasonable. *Leon, supra*, at 923, 104 S.Ct. 3405, citing *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Based on the record submitted, the agents executing the search warrant acted with objective and reasonable good faith. *Leon, supra*, at 922, 104 S.Ct. 3405. Defendant's motion for suppression based on an asserted lack of probable cause should therefore be DENIED.

### 4. Franks Hearing

Defendant asserts that a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), should be held to test the accuracy of Meinhardt's statements in his Affidavit. Defendant's Motion at 21. Specifically, Defendant asserts that Meinhardt deliberately misled the court and recklessly disregarded the truth when he alleged that Defendant "admitted to his having provided a portion of the currency to be used by Williams as a down payment for the marijuana," Meinhardt Affidavit at 3. *See* Defendant's Motion at 20.

 In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978),

where a defendant establishes that a search warrant application contains an intentional falsehood and that the falsehood is essential to the finding of probable cause, a hearing must be conducted to test the truthfulness of the warrant and its underlying affidavits. *Franks, supra,* at 171, 98 S.Ct. 2674; *United States v. Moore,* 968 F.2d 216, 220 n. 1 (2d Cir.), *cert. denied,* 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992).

■■■■■ To require a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) the warrant affidavit contains a false statement, (2) the allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth, and (3) the allegedly false statement was necessary to a finding of probable cause. *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir.1998); *United States v. United States Currency in the Amount of $228,536,* 895 F.2d 908, 919 (2d Cir.), *cert. denied,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks, supra,* at 171, 98 S.Ct. 2674; *United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, Connecticut,* 897 F.2d 97, 100 (2d Cir.1990). Additionally, preliminary showings by a defendant must include both allegations and offers of proof. *Franks, supra; United States v. Zhang Jian Zhong,* 833 F.Supp. 1010, 1014 (S.D.N.Y.1993). If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing. *Salameh, supra.*

■■■■ Defendant has failed to make a substantial preliminary showing that Meinhardt deliberately misled the court, recklessly disregarded the truth, or created material omissions in making this statement. *Salameh, supra,* at 113. Based on

the court's review of the recorded conversation between Defendant and Williams on April 5, 1996, it can, at the very least, be inferred that Defendant provided Williams with money prior to Williams' attempted purchase of narcotics. Particularly revealing is Defendant's statement to Williams during the recorded conversation, "The only thing I didn't do ... was not give you the money, but I told you not to go. I told, when you started talking about entrapment, that blew my mind. I said don't do it." Transcript of Recorded Conversation between Defendant and Lester Williams, Exhibit C to Defendant's Exhibits at 17. Additionally, during this conversation, Defendant stated, "He also told me that I should stop practicing in criminal law. That I should resign my position in Bedford. And this is all based upon what you told me on the phone when I talked to you in Florida. That they knew that I had given you $65,000." *Id.* at 14. Defendant does not contend that this conversation was fabricated or misquoted. Defendant has failed to make a substantial preliminary showing that Meinhardt deliberately misled the court or recklessly disregarded the truth in asserting that Defendant provided Williams money for the purchase of narcotics.

The alleged misrepresentations and omissions in the supporting affidavit are also inconsequential to the finding of probable cause. *Salameh, supra,* at 114. As discussed, the other evidence presented in Meinhardt's affidavit raised a reasonable probability that Defendant's law office contained evidence of his involvement in Williams' attempt to purchase narcotics. Disregarding this allegedly false statement in Meinhardt's affidavit, the other evidence presented by the government amply supports a finding of probable cause. *Salameh, supra.*

Finally, as noted, Defendant had, prior to the agents' request for the warrant, already been indicted on the instant charges. Thus, the magistrate judge was confronted with the fact that the Grand

Jury had found probable cause to believe Defendant had committed the very crimes to which the search warrant related. The magistrate judge only needed to find there was probable cause to believe evidence of the crime, *i.e.,* copies of the phony business papers, were stored in the computer at Defendant's offices. Williams' averments established the probable cause nexus between such documents and Defendant's culpability; Schweter established Defendant's connection to the documents and their likely presence on Defendant's computer system, and Meinhardt's expert opinion provided an additional basis to believe evidence of the indicted offenses would be found at Defendant's law office.

Accordingly, Defendant has failed to make a substantial preliminary showing that a hearing is required to ascertain that facts, material to the finding of probable cause, were misstated or misrepresented, either knowingly or intentionally, or with reckless disregard for the truth, in Agent Meinhardt's application for the search warrant. Defendant's motion for a *Franks* hearing should therefore be DENIED.

### b. *Defendant's Warrantless Search Claim*

Defendant asserts that his Fourth Amendment rights were violated as the Government, using Caroline Schweter as its agent, conducted a warrantless search of Defendant's computer files on September 22, 1997. Defendant's Motion at 16. Specifically, Defendant contends that Schweter, in verifying to the agents the precise location of the stored document files in Defendant's computer, acted either "at the Government's behest" or "with the knowledge and acquiescence of the Government." *Id.* at 17; Defendant's Supplemental Memorandum of Law at 12. As according to Defendant, such evidence was necessary to the Government's search warrant, Defendant requests suppression of all evidence seized from his law office computer, as fruit of the Schweter warrantless search. Defendant's Motion at 16.

It is not necessary to determine whether Schweter's actions, subsequent to her conversation with Agent Kasprzyk, in verifying the presence of the documents in the office computer and transmitting this information to Agent Gummow, constituted government involvement sufficient to transform her conduct into a search, as even without such information, the Meinhardt Affidavit contained sufficient facts to establish probable cause to search for the computer files.

 When an application for a search warrant includes both tainted and untainted evidence, the warrant may be upheld if the untainted evidence, standing alone, establishes probable cause. *Laaman v. United States,* 973 F.2d 107, 115 (2d Cir.1992). In this case, the Meinhardt Affidavit, independent of the directory and file names obtained during the alleged warrantless search by Schweter, supports a finding of probable cause. As discussed, the Meinhardt Affidavit provides a detailed description of the criminal activities involving Defendant and Williams, based on information gathered during the Government's investigation of Defendant, including information provided from informant Williams and Caroline Schweter and Defendant's Grand Jury Indictment. Discussion, *supra,* at 249–50.

In her conversation with Kasprzyk on September 22, 1997, Schweter recounted that in response to Defendant's inquiry whether the promissory note and purchase agreement were stored in digital form on the computer, she stated to Defendant that she "imagined" such documents were still stored in the computer. Meinhardt Affidavit at 5. Defendant understood Schweter's response to him to mean the documents were likely still on the computer, stating that he would instruct her to remove the files from the computer upon his return on September 24, 1997. *Id.* at 6. The Meinhardt Affidavit therefore provided a sufficient nexus between the crimes charged in the Indictment and the computer files stored on Defendant's law office computer,

independent of the directory and file name information provided by Schweter to Agent Gummow on September 23, 1997. Further, the agents were already aware of the file name of. the purchase agreement, "911," prior to the search, as it appears on the face of this document as provided by Williams. Exhibit A to Government's Response. Additionally, the probable cause statement amply justified a search for the specific documents, the particular file references provided by Schweter were not essential to the issuance of the warrant for the documents on the computer disks, and the warrant could properly have been directed to them as residing in the computer with or without their respective identifying computer file names. *Riley, supra,* at 844–45 (fact that under the warrant agents would need to examine a range of records and items within house to locate seizable items is not a violation of the Fourth Amendment as few people will catalogue and separately file incriminating evidence); *Hunter, supra,* at 582 (government's wholesale removal and subsequent search of computer hardware and software from attorney's office upheld, as sufficient evidence of government's intention to search only for records as particularized existed; no indication that the government sought the "wholesale seizure of computer equipment so that every file could be scrutinized for evidence of any violation of the law."). Here, even without the specific identifying directory and file names provided by Schweter, the agents could have reasonably checked each file to locate the backdated documents which were described with reasonable particularity. However, more comprehensive review of the stored documents may have required additional precautions to avoid attorney-client privilege issues. *See Hunter, supra,* at 582 (citing *National City Trading Corp. v. United States,* 635 F.2d 1020, 1026 (2d Cir.1980)).

In this case, based on the totality of the circumstances, there was a fair probability that evidence linking Defendant to the crimes charged in the Indictment could be found stored in Defendant's law office computer, independent of the directory and file names provided by Schweter.[6] *Gates, supra,* at 238–39, 103 S.Ct. 2317. Excising the fruits of her alleged warrantless search from the warrant application, probable cause nevertheless existed to search Defendant's law office computer for the documents which had been reasonably described. Defendant's motion to suppress evidence on the basis of an asserted unconstitutional search by Schweter should therefore be DENIED on this ground.

 Alternatively, Defendant had no reasonable expectation of privacy in the computer files as Schweter acted pursuant to the authorization granted to her by Defendant in her status as legal secretary in accessing the computer and retrieving the specific directory and file names of the documents. What an employee observes in her daily functions is beyond an employer's reasonable expectation of privacy and thus receives no Fourth Amendment protection. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 314–15, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *United States v. Miller,* 800 F.2d 129, 133 (7th Cir.1986); *United States v. Ziperstein,* 601 F.2d 281, 289 (7th Cir. 1979).

In this case, it was within Schweter's authority as Defendant's legal secretary to access the computer and obtain the directory and file names, as she had "the responsibility for creating, producing and preserving legal documents," and had been given access to the computer system for the purpose of facilitating the legal work of Defendant and Frank. Frank Affidavit at 1–2.[7] In her Affidavit, Schweter stated

---

**6.** To the extent the reviewed files would contain attorney-client privileged material, Defendant's remedy is suppression of such material, not invalidation of the search. *National City Trading Corp. supra,* at 1026.

**7.** Notably, Defendant has submitted no evidence that Schweter's search did not occur during regular business hours.

During the course of my tenure as Mr. Longo's legal secretary, he would regularly and routinely ask me to produce and preserve certain documents utilizing a computer system located in my work space. I had absolute and unlimited access to the documents stored within the computer system at my work station, and was entrusted to name and maintain within the computer system all documents which I prepared.

Affidavit of Caroline Schweter, Exhibit to Government's Reply Affidavit at 2. Defendant does not contradict Schweter's statement describing her duties as Defendant's employee, including daily access to Defendant's computer. Accordingly, as to any viewing of computer files conducted by Schweter resulting from her status as Defendant's legal secretary, Defendant had no reasonable expectation of privacy in the directory and file names stored on the computer. *See Ziperstein, supra,* at 289 (employer had no reasonable expectation of privacy in pharmaceutical prescriptions turned over to the FBI by a pharmacist in his employ, as such records "formed the basis of [the employee's] daily activities" and were therefore legitimately obtained); *Miller, supra,* at 134 (employee who had unlimited access to a defendant's business records which constituted evidence of fraud had apparent authority as custodian of the records, and, as such, defendant had no reasonable expectation of privacy to prevent the employee's compliance with the subpoena); *cf. United States v. Welliver,* 976 F.2d 1148, 1153 (8th Cir.1992) (employer had no objectively reasonable expectation of privacy in information contained in insurance company reports disclosed by employee, as employer expected such information to be revealed to both accounting agency contracting with government and government agency, and government entities had right to inspect company records pursuant to reinsurance agreement). In this case Defendant had no objectively reasonable expectation of privacy in the information contained in the files, *see Katz v. United States,* 389 U.S.

347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), as a plain reading of the promissory note and purchase agreement indicates that Defendant executed both documents with the intention of producing them in court should his transactions with Williams come into question. *See Welliver, supra,* at 1153. Additionally, in each of these cases, the court's finding that no reasonable expectation of privacy attached to the records at issue included the fact that such records belonged to the defendant and were obtained from his premises.

While Defendant argues that Schweter's authority to access such material was limited to those duties assigned by Defendant and Attorney Frank in connection with the purposes of Defendant's law practice, and she therefore had no authority to release the file names and titles of documents on the computer, Frank Affidavit at 1–2. Defendant has not demonstrated that the FBI or DEA agents had knowledge of this limitation on Schweter's authority. *Miller, supra,* at 135 (unless the owner of such documents expressly limits the employee's authority over the records, and law enforcement officers are aware of the limitation, law enforcement officers may reasonably rely on the employee's representation of apparent authority to provide such records to them consistent with the Fourth Amendment). As Defendant has failed to demonstrate that the agents had knowledge of any limitation on Schweter's apparent authority to access Defendant's computer, a finding that Defendant had no reasonable expectation of privacy in this information as to his employee, Schweter, is warranted. Accordingly, Schweter's actions do not constitute a search under the Fourth Amendment. *See Katz, supra,* at 353, 88 S.Ct. 507 (the government's activities in electronically recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth, thus constituting a 'search and seizure' within the meaning of the Fourth Amendment). Moreover, Schweter's subsequent action did not constitute a

removal of anything from Defendant's office, and her decision to reveal the information relating to the computer records she thus obtained is unprotected by the Fourth Amendment. *Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 17 L.Ed.2d 374, (1966) ("[t]he Fourth Amendment does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.").

■ Even if such a limitation on Schweter's authority existed, and the agents were aware of this limitation, given Defendant's inquiry to Schweter on September 22, 1997 whether the promissory note and purchase agreement existed on the computer, and his statement to her that he would be having her remove these files from the computer upon his return on September 24, 1997, Schweter also conducted her scrutiny of the computer files at Defendant's direction, and therefore acted within the scope of her authority at the time of the claimed warrantless search. *See* Meinhardt Affidavit at 6. Defendant does not dispute Schweter's recall of Defendant's stated intention regarding erasure of the records.

■ As to any viewing of computer records conducted by Schweter based on her status as his legal secretary, Defendant has failed to demonstrate a reasonable expectation of privacy in the directory and file names. As discussed, accessing and using this information fell within Schweter's daily job activities, she had apparent authority to obtain such information, and Defendant has submitted no evidence that the agents were aware of any alleged limitation on this apparent authority. Alternatively, Schweter had actual authority to review the computer files. It is well established that when an individual reveals or permits disclosure of private information to another, he assumes the

risk that his confidant will provide that information to the authorities, and if such occurs, the Fourth Amendment does not prohibit use of that information. *U.S. v. Jacobsen*, 466 U.S. 109, 117, 104 S.Ct. 1652, 80 L.Ed.2d 85; Hoffa, supra, at 302, 87 S.Ct. 408.

Accordingly, to the extent Defendant claims an illegal search as to any viewing of computer records conducted by Schweter pursuant to her status as Defendant's legal secretary, Defendant has not demonstrated a reasonable expectation of privacy with respect to Schweter's access and disclosure and there was therefore no search prohibited by the Fourth Amendment.

■ Even if Defendant had such an expectation of privacy, he has failed to demonstrate Government involvement in the search. The Fourth Amendment proscription against unreasonable searches and seizures applies only to government action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any government official. *Jacobsen, supra,* at 113, 104 S.Ct. 1652 (citing *Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980)); *Maunsell v. Greenspan*, 1998 WL 279444, *2 (2d Cir.1998); *United States v. Feffer*, 831 F.2d 734, 737 (7th Cir.1987); *United States v. Bennett*, 709 F.2d 803, 805 (2d Cir.1983), *revised,* 729 F.2d 923 (2d Cir.1984), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984); *United States v. Snowadzki,* 723 F.2d 1427, 1429 (9th Cir.1984); *United States v. Walther*, 652 F.2d 788, 791 (9th Cir.1981); *see also U.S. v. Knoll,* 16 F.3d 1313, 1320 (1994); *United States v. Miceli,* 774 F.Supp. 760, 768 (W.D.N.Y.1991); *United States v. Gregory,* 611 F.Supp. 1033, 1044 (S.D.N.Y.1985).[8] As discussed,

---

**8.** In *Jacobsen,* a wrapped parcel that had been damaged by a forklift and leaking white powder was searched by a carrier employee, who notified authorities of its suspected contents. That search and seizure by the employee was held not to be illegal under the Fourth Amendment because the Constitution proscribed illegal actions by the government, and

*see* Discussion, *supra,* at 249–50, Defendant had no reasonable expectation of privacy in the computer files stored in his law office computer to the extent that Schweter acted pursuant to her status as Defendant's legal secretary, in the absence of a showing of Government involvement. Accordingly, the court will address whether the Defendant has demonstrated government involvement in the search.

 To determine whether a private party acted as a government agent in conducting a search, courts consider whether the defendant has demonstrated government knowledge and acquiescence in the search, and whether the private searcher intended to assist law enforcement as opposed simply to achieve his own ends. *Bennett, supra,* at 805; *see also Feffer, supra,* at 739. Knowledge and acquiescence, *simpliciter,* however, will be insufficient to attribute the private party's action to the government unless the circumstances demonstrate the government explicitly or implicitly instigated the search. *See, e.g., Knoll, supra,* at 1319–20 ("AUSA's requests tacitly suggested and condoned further searching.") [9]; *Bennett, supra,* at 804 (agent requested photographs of weapon); *Walther, supra,* at 791 (past reward payments for evidence); *cf., Jacobsen, supra,* at 115, 104 S.Ct. 1652 (no evidence suggested private action leading to discovery of contraband encouraged or induced by agents).

In this case, Defendant has failed to submit evidence sufficient to require suppression on the issue of whether Schweter acted as an agent of the Government. In her affidavit, Schweter stated

[a]t no time did any government agent or attorney ever ask me to conduct any type of search or examination of the information contained within or contents of the computer I utilized during the

course of my employment. Instead, any such information provided by me to the government agents and attorneys, including my providing of the directory and file names for the two above-mentioned documents on September 23, 1997, was done entirely of my own free will, volition, and initiative.

Affidavit of Caroline Schweter, attached as exhibit to Government's Reply Affidavit at 2–3. Assistant United States Attorney Kennedy added, "Ms. Schweter's conduct in providing the agents with the file and directory names for the subject documents was a purely private endeavor undertaken without the participation or knowledge of the government." Government's Reply Affidavit at 5.

Defendant relies on *United States v. AJS Merchandising, Inc.,* 90–CR–121(A) (W.D.N.Y.1993) (*"AJS"*), attached as Exhibit G to Defendant's Exhibits, and *Knoll, supra,* for his position that suppression is warranted, arguing that the Government had knowledge that Schweter planned to conduct a search of Defendant's computer files following her conversation with Kasprzyk. In *AJS,* however, the Government informant entering onto the premises no longer considered himself an employee of the defendant, and had no authorization to be on the premises.

 Here, the undisputed fact is that Schweter, as Defendant's legal secretary, had authorization to access not only Defendant's office but the computer in which the documents were stored in electronic form. Nor is there any dispute that Schweter's access to the computer for this purpose occurred on a regular workday, when she was expected to be at her workplace and perform her duties as Defendant's secretary including use of the computer. At best, if Schweter in fact assessed the com-

---

not private citizens *Jacobsen, supra,* at 113, 104 S.Ct. 1652.

**9.** Given the facts presented in *Knoll,* and as relied upon by the court, the statement that "[t]he Government may become party to a

search through nothing more than tacit approval," *Knoll, supra,* at 1320, cannot be read apart from the context of the record presented in that case.

puter files at issue following her conversation with Agent Kasprzyk, Schweter acted with mixed intentions, seeking information helpful to the Government, but also searching the computer for her own purposes. Whether she had a dual purpose in conducting such a search does not create a search cognizable under the Fourth Amendment, as Defendant had authorized Schweter's access to the computer. The fact that she may have breached Defendant's trust by giving the information to the Government after the access does not transform the access into a search. Even if the agents had encouraged her to check the computer system, Schweter's conduct would nevertheless be within the scope of her employment and thus no more a search for Fourth Amendment purposes than if performed by Schweter without any contact with the agents. Schweter's status as a private citizen providing assistance to the investigation, on her initiative, prior to her informing the FBI about the identity and presence of directory and file names on September 23, 1997 is insufficient to alter her status as Defendant's employee to that of an agent of the government.

 Further, both *AJS* and *Knoll* are distinguishable, as in both cases government involvement was found where the government had provided encouragement to the informant to initiate or continue to search. *See AJS, supra,* at 13; *Knoll, supra,* at 1319–20. Defendant has not demonstrated any similar degree of involvement by the Government in Schweter's activities here. The knowledge or acquiescence on the part of the government required to transform private into public action for Fourth Amendment purposes must be more than minimal, as *de minimis* or incidental contacts between the private citizen and law enforcement agents prior to or during the course of a search do not trigger Fourth Amendment protections. *Walther, supra,* at 791; *United States v. Battle,* 1997 WL 447814 (D.Kan. 1997); *AJS, supra,* at 12. Mere governmental approval of a particular type of private search in the absence of more active participation or encouragement is insufficient to require the application of Fourth Amendment standards. *See, e.g., United States v. Koenig,* 856 F.2d 843, 849 (7th Cir.1988) ("[a]lthough the DEA may have known of Federal Express's security search policy, it is clear that Federal Express acted for its own private, business purposes."); *Snowadzki, supra,* at 1429 (no government involvement found where Internal Revenue Service agents indicated that defendant's records would be helpful in evaluating informer's claim prior to his search); *Walther, supra,* at 791 (citing cases) (finding government involvement in search conducted by airline employee where employee had been rewarded for providing drug-related information in the past).

In this case, Defendant's assertion of the requisite degree of government involvement is based on Schweter's transmitting the directory and file names to Agent Gummow on the day following her communication with Agent Kasprzyk. Defendant' Supplemental Memorandum at 12. Given the close time relationship between Schweter's contact with Kasprzyk, her statement to Kasprzyk that she "imagined" such files were still on the computer, and her disclosure of the directory and file names to Agent Gummow the next day, Defendant argues that she must have conducted a search of the computer files at the direction, or at least with the knowledge and acquiescence, of the agents. *Id.*

Defendant has not demonstrated that the Government requested further information or provided other encouragement to Schweter prior to the alleged search. In a sworn statement, Mr. Kennedy stated that on October 8, 1996 he expressly advised Schweter not to remove or review any files located within Defendant's law office. Government's Supplemental Reply Affidavit at 1. Further, the Government's search warrant was already supported by the Indictment recently returned against Defendant and information provided by

Lester Williams. Even if Schweter had accessed the computer files with the purpose of assisting the Government, her prior contacts with the Government to communicate relevant information, which, she averred without contradiction, were initiated solely by her, are thus consistent with her affidavit and inconsistent with Defendant's unsupported speculation. The *de minimis* nature of any involvement, if such occurred, between the agents and Schweter on the relevant dates is confirmed by the undisputed fact that Schweter's prior contacts with the Government were all initiated by her. Given the sworn statements submitted by the Government and Schweter affirming that her decision to share the information was solely her own, and the absence of any sworn statement by Defendant controverting these averments, Defendant's submissions are without foundation and therefore insufficient to warrant suppression or an evidentiary hearing. *Pena, supra,* at 339.

Accordingly, as probable cause existed to search independent of the directory and file names provided by Schweter to the Government, Defendant had no reasonable expectation of privacy with respect to Schweter's access to Defendant's computer pursuant to her status as Defendant's legal secretary, and Defendant has failed to demonstrate Government involvement in the search by Schweter, Defendant's motions for suppression on these grounds should be DENIED.

### c. *Defendant's Motion to Suppress Recorded Statements*

Defendant moved to suppress any conversations between Defendant and Lester Williams recorded by the Government which occurred during April 1996. Defendant's Motion at 21. According to Defendant, such conversations were recorded without an electronic intercept warrant, and without the voluntary consent of Williams. *Id.* at 21–22. Defendant therefore requests suppression of these conversations. *Id.* at 25. The Government con-

tends that Williams voluntarily consented to the recording of all intercepted conversations. Government's Response at 41.

As a threshold matter, Defendant argues that whether Williams voluntarily consented to the recording should be determined by reference to Sixth Circuit law, as the recording occurred in Ohio. Defendant's Motion at 22. The Government, while not contesting that Sixth Circuit law applies in this case, argues that the law of the Second Circuit on this issue is identical. With respect to challenges to the validity of electronic surveillance, "the governing law should be that of the place where the electronic surveillance occurred." *United States v. Restrepo,* 890 F.Supp. 180, 191 (E.D.N.Y.1995); *United States v. Gerena,* 667 F.Supp. 911, 913 (D.Conn.1987). Accordingly, in determining whether Williams voluntarily consented to the recording of the conversations, the court shall apply Sixth Circuit law.

The parties do not dispute that Defendant is an aggrieved person under 18 U.S.C. § 2515 with standing to challenge whether Williams voluntarily consented to the recording of these conversations. *See* 18 U.S.C. § 2510(11); 2510(10). The Government argues, however, that Williams voluntarily consented to any recordings by the Government, and, therefore, the exception in 18 U.S.C. § 2511(2)(c) applies. This section states

> [i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to the interception.

18 U.S.C. § 2511(2)(c); *see also United States v. Barone,* 913 F.2d 46, 49 (2d Cir. 1990). Neither the Fourth Amendment nor any federal statute prohibits law enforcement officials from recording or listening to conversations so long as one of the parties to the conversation has con-

sented. *United States v. White*, 401 U.S. 745, 752–53, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (plurality opinion); *United States v. Peete*, 919 F.2d 1168, 1177 (6th Cir.1990).

The Government acknowledges its burden of showing that Williams voluntarily consented to the recording prior to its introduction at trial. Government's Response at 42. However, the parties dispute whether the Government has sufficiently demonstrated voluntary consent in this case. Defendant relies on *United States v. Blackwell*, 34 F.3d 1068 (6th Cir. 1994) and *Schneckloth v. Bustamonte*, 412 U.S. 218, 223, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), two cases involving consent to physical searches conducted by law enforcement officials, in arguing that a court reviewing the showing by the government must review several factors before determining whether an individual's cooperation was voluntary. However, the courts in these cases addressed whether an individual had voluntarily consented to a physical search of his person, and they are therefore factually distinguishable. The parties have not submitted, nor has the court's research revealed, any Sixth Circuit authority addressing whether the government sufficiently demonstrated voluntary consent to a recorded conversation. Accordingly, the court turns to an examination of this issue under Second Circuit authority.

■ In this circuit, the quantum of evidence required to show that an informer consented to the monitoring or recording of a telephone call is substantially less than that required to show consent to a physical search. *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir.1973); *United States v. Restrepo*, 890 F.Supp. 180, 202 (E.D.N.Y.1996). As the Second Circuit stated in *Bonanno*

> An informer's consent to the monitoring or recording of a telephone conversation is an incident to a course of cooperation with law enforcement officials on which he has ordinarily decided some time previously and entails no unpleasant conse-

quences to him. Hence, it will normally suffice for the Government to show that the informer went ahead with a call after knowing what the law enforcement officers were about.

*Bonanno, supra*, at 658.

■ In the present case, the Government has more than met its burden of demonstrating that Williams voluntarily consented to the recording of conversations. Williams had already been arrested and arraigned, and was cooperating in the Government's investigation of Defendant as a condition of his plea agreement. He was represented by an attorney at the time of his incarceration and during the time of the recording. Government's Response at 44. Williams' voluntary cooperation is also evidenced by his statement at the end of the recorded conversations, "Hey guys, back to Van Akin," in reference to reuniting with FBI agents at a prearranged location. Transcript of Recorded Conversations Between Defendant and Lester Williams, Exhibit C to Defendant's Exhibits at 44. Based on this showing, at the time of the recorded conversation, Williams, at the very least, "knew what the Government was about." *Bonanno, supra*, at 658.

■ Further, Defendant's allegations of coercion, lenient treatment, and Williams' impaired ability to consent based on his status as a recovering alcoholic, Defendant's Motion at 24, constitute unsupported speculation and are therefore insufficient to warrant an evidentiary hearing. As stated, suppression of evidence will not be ordered unless a defendant demonstrates with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved. *Pena, supra*, at 339.

Defendant asserts that coercion may be implied based on Williams' arrest and incarceration for "over a week" prior to the recording. Defendant's Motion at 24. According to Defendant, while the Govern-

ment obviously interrogated and debriefed Williams, the defense has not been privy to what measures the Government used to convince Williams to go along with the taping of these conversations. *Id.* Defendant nevertheless asserts that "coercion, either express or implied, is suspected." *Id.* Other than relying on suspected offers of leniency, Defendant refers to no other specific incidents or means by which the Government may have coerced Williams to consent to the recording. However, the Fifth and Sixth Circuits have held that consent to record a conversation is not vitiated by governmental promises of leniency. *See United States v. Jones,* 839 F.2d 1041, 1051 (5th Cir.1988); *United States v. Scaife,* 749 F.2d 338, 345 (6th Cir.1984); *United States v. Franks,* 511 F.2d 25, 30–31 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975). While the Second Circuit has not yet addressed the issue, at least two district courts within the Second Circuit have held consistently with the Fifth and Sixth Circuits. *See Restrepo, supra,* at 203; *United States v. Estes,* 609 F.Supp. 564, 570 (D.Vt.1985).

Defendant also asserts that Williams' consent was improperly induced given his mental condition during the time in which he consented, as he is an alcoholic and drug abuser. Defendant's Motion at 24. However, Defendant has presented to no specific evidence that Williams' consent was negated by the influence of drugs or alcohol at the time he engaged in the recording. *See, e.g., United States v. McKneely,* 69 F.3d 1067, 1073 (10th Cir. 1995) (informant's testimony that she was "on drugs and ... high" at the time of commencement of flight did not vitiate her consent to a recording conducted soon after reaching her destination, as informant knew recording was occurring and her demeanor on audio and videotape did not suggest she was too intoxicated to provide

voluntary consent); *United States v. Kelly,* 708 F.2d 121, 126 (3d Cir.1983) (witness' consent to tape recording of telephone conversations between him and defendant was voluntary where DEA agents did not directly apply any coercion to obtain witness' cooperation, and there was no evidence that drug use impaired his judgment). Defendant's assertion that, based on Williams' past hospitalization for alcoholism and a previous arrest for an offense involving alcohol, Williams' consent may not have been voluntary, is pure conjecture.[10]

Defendant's allegations of coercion and impaired ability to consent are insufficient to oppose the Government's affirmative showing that Williams voluntarily consented to the recording. *Pena, supra,* at 339. As there are no reasons to suppress the recorded conversations or conduct an evidentiary hearing, Defendant's motion should be DENIED on this ground.

Defendant's motions for suppression pursuant to the Fourth Amendment should be DENIED, as (1) probable cause supported the Government's search warrant; (2) the search warrant was sufficiently particular; (3) the good faith exception to the exclusionary rule applies; (4) Defendant has failed to demonstrate that the Government conducted a warrantless search; and (5) the Government sufficiently demonstrated Williams' voluntary consent to the recorded conversations. Additionally, Defendant's motion for a *Franks* hearing should be DENIED as he has failed to demonstrate that such a hearing is required.

### 2. *Defendant's Attorney–Client Privilege Claim*

Defendant argues that suppression of all evidence obtained from the Government's search and seizure, including evidence

---

**10.** Notably, during the recorded conversation with Defendant, Williams stated that while he had consumed one drink after being released on bond from jail, he had not been drinking

as much because it didn't "agree with him" and he "can't drink anymore." Transcript of Recorded Conversation at 21.

from his computer, is warranted, as the attorney client privilege was violated by Schweter's disclosure of privileged information to the Government. Defendant's Motion at 16–17, 19. Specifically, Defendant argues that suppression is necessary, as Schweter may have "surreptitiously overheard attorney-client privileged discussions" between Defendant and his attorney, William Summers. *Id.* at 16–17.

■■■■ The attorney-client privilege attaches (1) where legal advice of any kind is sought, (2) from a professional legal advisor, (3) the communications relate to that purpose, (4) made in confidence, (5) by the client, (6) are at [the client's] instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (2d Cir.1984) *citing United States v. Bein,* 728 F.2d 107, 112 (2d Cir. 1984) *quoting United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961); *United States v. Sabri,* 973 F.Supp. 134, 140 (W.D.N.Y. 1996).

■■■■ The burden of establishing the existence of the privilege rests upon the proponent of the privilege. *In re Grand Jury Subpoena Dated January 4, 1984,* 750 F.2d 223, 224 (2d Cir.1984); *Sabri, supra,* at 140. A person's subjective belief that the conversation was privileged is not by itself sufficient to establish the privilege. *United States v. Keplinger,* 776 F.2d 678, 700 (7th Cir.1985) *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *Sabri, supra,* at 140. Where a violation of the attorney-client privilege is demonstrated, the remedy for such a violation is the suppression of evidence derived from the privileged communication. *See, e.g., United States v. Stern,* 511 F.2d 1364, 1368 (2d Cir.1975); *United States v. Burnett,* 1996 WL 1057161, *11 (E.D.N.Y. 1996); *Securities and Exch. Comm'n v. Forma,* 117 F.R.D. 516, 523 (S.D.N.Y. 1987).

In her affidavit, Schweter stated, "[b]etween September 19, 1997 and the present, I have never overheard, intercepted, or observed any communications ... between Mr. Longo and his attorney William Summers, Esq. Having never heard or seen of any such communications, I have obviously never reported any such conversations to any government agents or attorneys." Schweter Affidavit at 2. Additionally, the Government denied receiving any such protected information from Schweter. Government's Reply Affidavit at 2. Moreover, the Government indicated that it had no intention of introducing at trial any attorney-client privileged communications between Defendant and Summers which Schweter may have overheard. Government's Response at 34.

In his submissions to the court, Defendant argues that Schweter's failure to specifically state that she did not provide attorney-client privileged information prior to September 19, 1997 is indicative of a violation of the privilege. Defendant's Supplemental Memorandum of Law at 5. In arguing that the attorney-client privilege was violated in the months prior to September 19, 1997, Defendant relies on a statement which Schweter allegedly made to Assistant United States Attorney Kennedy describing a conversation she overheard between Defendant and Summers in the months prior to Defendant's indictment in September 1997. Defendant's Supplemental Memorandum of Law at 6.

According to the Government, Schweter contacted Kennedy on May 22, 1997, stating that Defendant and Summers had questioned her regarding her testimony before the Grand Jury. Government's Supplemental Reply Affidavit in Response to Defendant's Omnibus Motions, Exhibit A to Government's Supplemental Response at 2. Defendant, however, has provided no specifics as to the contents or circumstances of this conversation sufficient to establish its confidential nature or that, assuming its privileged status, Schweter

improperly "eavesdropped" on the conversation as an agent of the Government.

■ To the extent that Defendant and Summers initiated conversation with Schweter concerning her grand jury testimony, Defendant waived any attorney-client privilege which may have applied. The attorney-client privilege is not available when the substance of the communication is disclosed to a third party by the client or with his approval or consent. *In re von Bulow,* 828 F.2d 94, 101 (2d Cir. 1987); *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). Moreover, it is implausible that as the person to whom Defendant and Summers directed their query, Schweter can be accused of eavesdropping in any form.

■ Further, to the extent that Schweter overheard privileged discussions between Defendant and his counsel, Defendant's Motion at 16–17, Defendant similarly waived the attorney-client privilege. The attorney-client privilege is waived if the communication is made in the presence of or later divulged to third parties unless the third parties are the attorney's employees or agents, or are necessary to the furtherance of the attorney-client relationship. *Magee v. Paul Revere Life Insurance Co.,* 172 F.R.D. 627, 639 (E.D.N.Y. 1997); *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 264 (S.D.N.Y.1995); *Stirum v. Whalen,* 811 F.Supp. 78, 82 (N.D.N.Y.1993); *United States v. Gotti,* 771 F.Supp. 535, 542 (E.D.N.Y.1991). Such disclosures destroy the cloak of confidentiality which, but for Schweter's presence with the consent of Defendant or Summers, might otherwise shield the communications, but as a result of their mutual lack of due care, it is not protected.

Defendant has made no showing that the attorney-client privilege is nonetheless applicable based on Schweter's status as an employee or agent of Summers, or that Schweter was necessary to the conduct of the confidential relationship between Defendant and his attorney in this case. *Compare United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961) (attorney-client privilege attached to conversation between attorney and client in the presence of accountant hired by attorney, as the "presence of the accountant [was] necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit"); *Hendrick v. Avis Rent A Car System, Inc.,* 944 F.Supp. 187, 189 (W.D.N.Y.1996) ("communications to any person whose intervention is necessary to secure and facilitate the communication between an attorney and client are privileged, [such] as communications through an interpreter, a messenger or any other intermediary"). The fact that Schweter, as Defendant's employee, was present does not transform her into an agent of Summers so as to bring her within the ambit of Defendant's privilege. It is unrealistic to believe that, as attorneys experienced in criminal law practice, either Defendant or Summers could have thought otherwise. As stated, a defendant runs the risk that the trust or confidence he places in an individual may be disappointed without a resulting constitutional violation. *See Jacobsen, supra,* at 117, 104 S.Ct. 1652; *Hoffa, supra,* at 302, 87 S.Ct. 408.

■ Defendant also argues a violation of the privilege occurred based on the Government's decision to conduct the search of Defendant's law office for the computer documents at a time when he and his counsel were out of town attending Defendant's arraignment in Buffalo. Defendant's Motion at 17. However, Defendant's reliance on the mere fact of the timing of the search is insufficient to establish that privileged information was conveyed to the Government, nor does it require an evidentiary hearing on that issue. The Government stated that the search was conducted at this time to avoid potential destruction of evidence by Defen-

dant, as Defendant had stated to Schweter that he would probably have her remove such files from the computer when he returned on September 24, 1997. Government's Response at 15. Significantly, Defendant does not attribute any illegality to Schweter's reporting of Defendant's stated intention nor does he contradict her recall of the conversation.

 Moreover, as noted, the Government represents that it does not intend to introduce any information protected by the attorney-client privilege at trial. Government's Response at 34. Thus, to the extent that the information Defendant seeks to suppress falls within that believed by the Government to potentially involve the privilege, Defendant's motion is moot.

Defendant has submitted no evidence of any possible violation of the attorney-client privilege in this case, merely speculating that although the Government has stated it has no privileged information in its possession, "[t]he prosecutor might not know the source or nature of all of his information, and other Government agents may have provided the prosecutor with apparently non-privileged information that they obtained through knowledge of privileged communication." Defendant's Supplemental Memorandum at 11. Defendant's inference based on Schweter's failure to specifically negate having overheard conversations between Defendant and Summers prior to September 19, 1997 is too thin a reed upon which to mandate an evidentiary hearing. As discussed, Defendant's failure to describe any circumstances under which Schweter could conceivably have done so, itself negates Defendant's assertions. Such failure by the only person in a position to know the facts is highly persuasive that such facts do not exist. In sum, based on Defendant's submissions, suppression of the materials seized from Defendant's law office computer is unwarranted. *Pena, supra,* at 339.

### 3. *Defendant's Sixth Amendment Claim*

Defendant argues that the Government, acting through Schweter, interfered with the attorney-client relationship in this case in violation of his Sixth Amendment right to counsel, by receiving privileged communications and conducting a search at a time when neither Defendant nor his attorney was present. Defendant's Motion at 17. Although Defendant seeks the suppression of evidence on this ground, Defendant has failed to provide factual evidence sufficient to warrant suppression of evidence. *Pena, supra,* at 339.

 Government interference in the relationship between attorney and defendant may violate the defendant's right to effective assistance of counsel. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). However, assuming that the government does not deliberately interfere in the relationship between defendant and counsel, the mere presence of a government agent, informant, or cooperating witness at conferences between defendant and counsel does not violate the sixth amendment. *Weatherford v. Bursey,* 429 U.S. 545, 554–59, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *United States v. Ginsberg,* 758 F.2d 823, 833 (2d Cir.1985). In order to require a hearing on such a claim, assuming that the Government has not interfered with the attorney-client relationship deliberately, the defendant bears the burden of "alleg[ing] specific facts that indicate communication of privileged information to the prosecutor and prejudice resulting therefrom." *Ginsberg, supra,* at 833; *United States v. Harloff,* 807 F.Supp. 270, 275 (W.D.N.Y.1992).

In making such a showing, a defendant must allege specific facts that indicate communication of privileged information to the prosecutor and prejudice resulting therefrom. *Ginsberg, supra,* at 833; *Harloff, supra,* at 275. Absent such communication, there exists no realistic possibility of either prejudice to the defense or benefit to the government. *Ginsberg, supra,* at

833; *United States v. Dien,* 609 F.2d 1038, 1043 (2d Cir.1979).

 In this case, Defendant has failed to demonstrate that the Government deliberately interfered with the attorney client relationship. Defendant's Sixth Amendment right to counsel attached at the time he was indicted, on September 19, 1997. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *United States v. Kon Yu-Leung,* 910 F.2d 33, 38 (2d Cir.1990); *Harloff, supra,* at 274. Defendant attempts to argue that the Government's interference with Defendant's attorney client relationship is shown by the Government's decision to conduct the search of Defendant's law office at a time when he and his attorney were out of town attending Defendant's arraignment in Buffalo. Defendant's Motion at 17. As discussed, the Government stated that the search was conducted at this time to avoid potential destruction of evidence. Government's Response at 15. As Defendant failed to deny he harbored such intention, the Government cannot be faulted for seeking the warrant when it did.

Defendant's submissions fail to establish that the Government deliberately conducted the search on this date and thereby breached the attorney client relationship between Defendant and Summers. This court's research has revealed no authority requiring the presence of either a party with an ownership or other interest in the property being searched, or his counsel, during the execution of a search warrant. Moreover, Defendant has not disputed that one of his attorneys, Edwin Vargas, was present during the execution of the search by the Government. Defendant has also failed to explain how the Government's conduct prejudiced the ability of his counsel, Summers or Vargas, to provide adequate representation. *Ginsberg, supra,* at 833; *Harloff, supra,* at 275. Moreover, Defendant has not alleged that any seizure of documents or other material created to assist Summers's representation occurred, and therefore the seized material was not within any attorney-client privilege. As Defendant's conversation with Schweter about his intention to erase the computer files upon his return from his arraignment, Meinhardt Affidavit at 6, stands uncontradicted by Defendant, the more plausible explanation of the Government's timing of the search was the prevention of the destruction of evidence. *See* Government's Response at 15. Defendant's argument that any interference with the attorney-client relationship between himself and Summers occurred based on the timing of the Government's search is, therefore illusory and without support, and thus insufficient to warrant suppression. *Pena, supra,* at 339. Defendant's motion should be DENIED on this ground.

### 4. *Defendant's DR 7–104 Violation Claim*

Defendant seeks to suppress all items seized during the Government's search of his law office, arguing that such evidence was obtained in violation of Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility ("DR 7–104(A)(1)") as adopted by the New York State Bar Association and applicable in this court. Local R.Crim.P. 57.4 (W.D.N.Y.). This section provides that

> [d]uring the course of the representation of a client a lawyer shall not ... [c]ommunicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

*See* New York Judiciary Law, Appendix, at p. 350 (McKinney 1992). Specifically, Defendant argues the Government violated this provision by using Schweter as its agent to breach the attorney-client relationship between Defendant and his attorney. Defendant's Supplemental Memorandum of Law at 3–4. According to Defendant, Summers began representing him on or before May 16, 1997, and Paul

J. Cambria, Jr. commenced his representation in June of 1997. Defendant's Supplemental Memorandum of Law at 4. As of May 16, 1997, Defendant was therefore a represented party.

 It is well established that, in the Second Circuit, DR 7–104(A)(1) is applicable to government attorneys in criminal prosecutions. *See United States v. Hammad*, 858 F.2d 834, 837–38 (2d Cir.1988), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *United States v. Jamil*, 707 F.2d 638, 645 (2d Cir.1983); *United States v. Scozzafava*, 833 F.Supp. 203, 208 (W.D.N.Y.1993).

In *Hammad, supra*, a sham subpoena issued by a government attorney was used by an informant to gain access to a represented suspect and record their conversation. The subpoena was held by the Second Circuit to have created the "pretense that might help the informant elicit admissions from a represented suspect." *Hammad, supra*, at 840. The court found that such investigative techniques "contributed to the informant's becoming the alter ego of the prosecutor" in violation of DR 7–104(A)(1). *Id.* However, under the "authorized by law" exception as stated in DR 7–104(A)(1), a prosecutor is permitted to "employ legitimate investigative techniques in conducting or supervising criminal investigations, and the use of informants to gather evidence against a suspect will frequently fall within the ambit of such authorizations." *Id.*, at 838.

 The use of an undisclosed informant acting at the direction of the government is an activity "authorized by law" and thus is exempt from DR 7–104(A)(1) regardless of whether the target is represented, absent a determination that the conduct is improper, ethically or otherwise, so as to place such conduct outside the "authorized by law" exception. *Scozzafava, supra*, at 210 ("[i]n the absence of misconduct, similar to that by the prosecutor in *Hammad*, which exceeds the lawful authority of the government attorney, no violation of DR 7–104(A)(1) occurs where a

prosecutor proposes the wiring of an informant for the purpose of recording conversations with a represented target of a criminal investigation, or even suggests the topics to be discussed, such actions being inherent in the exercise of the government attorney's authority to investigate effectively and prosecute crimes.")

 In his submissions to the court, Defendant argues that Schweter's failure to specifically state that she did not act as an agent of the government during the summer of 1997 or provide attorney-client privileged information during that time, is indicative of a violation of DR 7–104 by the government. Defendant's Supplemental Memorandum of Law at 5. Such failure to negate the possibility of Schweter's status as an informant is, however, irrelevant, as even if Schweter was acting for the Government, the use of a cooperating individual like Schweter in obtaining evidence in a criminal investigation is a form of communication authorized by law, and as such does not constitute a violation of DR 7–104. *Scozzafava, supra; cf. Hammad.* Moreover, there is no indication whatsoever in the record, that Schweter was acting at the direction of Mr. Kennedy, the only government attorney shown to have had any direct involvement in the investigations. Assuming, *arguendo*, Schweter could have acted on behalf of the agents involved, as they have not been shown to be attorneys, DR 7–104 would have no applicability.

Defendant also points to the Government's statement in its Reply Affidavit that Schweter had described a conversation she had participated in with Defendant and his attorney. Defendant's Supplemental Memorandum at 6; *see* Government's Reply Affidavit at 2. However, Defendant has provided no description of the contents of any alleged communication between Schweter and Defendant, as a represented party, which were not consented to by Defendant. Significantly, Schweter states

that, on one occasion, Defendant initiated conversation with her regarding his case, by asking what she had told the Grand Jury, and instructing her what to say during her testimony before the Grand Jury. Meinhardt Affidavit at 5. However, based on the applicable caselaw, such conduct by Schweter, even assuming she then acted as an informant, is irrelevant.

Further, Defendant has provided no evidence of any deliberate effort by the Government to learn defense strategy or tactics, to invade the defense camp, or otherwise interfere with the ability of Defendant's attorneys to advise and assist him. *Scozzafava, supra,* at 210–11. Nor is there any evidence of direct misrepresentation or abuse of process as the court found in *Hammad, supra.* As Defendant has also failed to provide the required degree of factual specificity in making his claim, no suppression hearing is warranted on this issue. *Pena, supra,* at 339.

Even if Disciplinary Rule 7–104(A)(1) were applicable and Defendant had made a factual showing with the required degree of specificity, the "authorized by law" exception applies in this case. Defendant has failed to show Assistant United States Attorney Kennedy engaged in "egregious misconduct suggestive of pretense or unfair dealing which would disqualify the Government's behavior from reliance upon the authorized by law exception," *Scozzafava, supra,* at 209, and the "authorized by law" exception to the Disciplinary Rule is therefore applicable nonetheless. As discussed, Defendant's allegations, in addition to his generalized contentions, rest upon pure conjecture and are therefore insufficient to require suppression or an evidentiary hearing. *Pena, supra,* at 339.

Based on the foregoing, Defendant's motion to suppress statements on the basis of any asserted violation of DR 7–104(A)(1), should be DENIED.

### 5. *Defendant's Motions for an Evidentiary Hearing*

■■ As noted, Defendant has also moved for a suppression hearing on several grounds. An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question. *United States v. Pena,* 961 F.2d 333, 339 (2d Cir.1992); *see also United States v. Mathurin,* 148 F.3d 68, 70 (2d Cir.1998); *Gentile v. County of Suffolk,* 926 F.2d 142, 148 (2d Cir.1991); *United States v. Wang,* 1998 WL 556160, *3 (S.D.N.Y.1998); *United States v. Florack,* 155 F.R.D. 49, 56 (W.D.N.Y.1994); *United States v. Waters,* 786 F.Supp. 1111, 1119 (N.D.N.Y.1992).

As discussed, applying the standard set forth in *Pena, supra,* at 339, Defendant has failed to demonstrate that such a hearing is warranted on any of the asserted grounds. Although he did not seek suppression on such grounds, Defendant also seeks an evidentiary hearing to determine whether a violation of his Fifth Amendment due process rights occurred.

### 6. *Defendant's Fifth Amendment Claim*

■■ Defendant contends that an evidentiary hearing is necessary to determine whether the Government's conduct violated his rights under the due process clause of the Fifth Amendment on the so-called "outrageous conduct" theory. Defendant's Supplemental Memorandum of Law at 8–9. The Second Circuit has recognized a due process defense to prosecution, "if the government violates a protected right of the defendant" and "if the government's conduct 'reach[ed] a demonstrable level of outrageousness.' " *United States v. Cuervelo,* 949 F.2d 559, 565 (2d Cir.1991) (*quoting Hampton v. United States,* 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (Powell, J., concurring)); *United States v. Chin,* 934 F.2d 393, 399 n. 4 (2d Cir.1991); *see also*

United States v. Berkovich, 168 F.3d 64, 68–69 (2d Cir.1999). The existence of a due process violation turns on whether the governmental conduct, standing alone, is "so offensive that it shocks the conscience." Chin, supra, at 398 (citing Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). However, courts have rarely, if ever, found such a violation. Berkovich, supra, 168 F.3d at 68–69 (citing United States v. LaPorta, 46 F.3d 152, 160 (2d Cir.1994) (finding only one case where a circuit court has found such conduct since 1976)). Where such violation of a defendant's due process rights is found, the proper remedy, if any, is dismissal of the indictment. Cuervelo, supra, at 566.

■ However, Defendant has failed to demonstrate that the Government's conduct in this case violated his federal due process rights. What constitutes "a demonstrable level of outrageousness" cannot be identified with precision, but "the due process claim, in the rare instances when successful, has prevailed to restrain law enforcement activities that involve coercion ... or outrageous violation of physical integrity," United States v. Myers, 692 F.2d 823, 837 (2d Cir.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983), or psychological integrity. Cuervelo, supra, at 565. In this case, Defendant does not assert that he suffered some psychological or physical harm as a result of the actions of the Government. Moreover, as discussed, the court finds no specific right of Defendant was violated during the course of the Government's investigation.

The authorities relied on by Defendant, United States v. Voigt, 89 F.3d 1050, 1066–68 (3d Cir.1996), United States v. Sabri, 973 F.Supp. 134, 147 (W.D.N.Y.1996), and United States v. Marshank, 777 F.Supp. 1507, 1519 (N.D.Cal.1991), are distinguishable from the instant matter, as a violation of the defendant's federal due process rights in each case was found based on a finding of outrageous official conduct in

the government's misuse of the defendant's attorney, not an employee of the defendant, as an informant to gather evidence against the defendant. Measuring Defendant's contentions against the relevant caselaw, Defendant has failed to demonstrate that the conduct of the Government in this case constitutes interference with Defendant's attorney's duty of loyalty to Defendant or was so offensive as to shock the conscience, thereby constituting a due process violation. Chin, supra, at 398; see also United States v. Miceli, 774 F.Supp. 760–71 (W.D.N.Y.1991) (sexual misconduct by IRS agent with Defendant's spouse does not violate Defendant's right to due process).

Defendant concedes that he "does not know yet whether the Government's conduct in this case warrants a motion to dismiss the indictment on due process grounds." Defendant's Supplemental Memorandum of Law at 9. Defendant's submissions consist of base speculation, and are therefore insufficient to warrant an evidentiary hearing. Pena, supra, at 339. As Defendant has failed to demonstrate even a colorable basis for his contention that the Government's conduct in this case was sufficiently outrageous, see Cuervelo, supra, at 565, Defendant's request for an evidentiary hearing resolving whether the Government violated his Fifth Amendment due process rights should be DENIED.

## CONCLUSION

Based on the foregoing, Defendant's motions to suppress, or, alternatively, conduct evidentiary hearings (Docket Item No. 40) should be DENIED. Defendant's motion for a Franks hearing should also be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

271

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendants.

SO ORDERED.

Feb. 26, 1999.